## BLINN, Mayor, et al. v. HASSMAN.

No. 23131. Opinion Filed Jan. 31, 1933.

W. H. Brown, Municipal Counselor, and A. P. Van Meter, Asst. Municipal Counselor, for plaintiffs in error.

Lillard, Gibbons & Wheeling, for defendant in error.

RILEY, C. J., This is an appeal from a decree of the district court of Oklahoma county, awarding a peremptory writ of mandamus, commanding the mayor and council, the city health director, and city manager of Oklahoma City to restore Charles T. Hassman, defendant in error, to the office of position of quarantine officer or inspector of quarantine affairs in the health department of said city, from which position or office the trial court found that said Hassman had been removed illegally, unlawfully, and in violation of the provisions of the charter of said city.

The action was brought by Hassman, hereinafter referred to as plaintiff, against the mayor, members of the city council, the city health director, and city manager to compel the restoration of plaintiff to the "office of quarantine officer" of said city.

Plaintiff alleges that for about three years prior to January 4, 1928, he had been employed as quarantine officer. That on said date, pursuant to the order of the civil service commission of the city, he took the civil service examination provided for in the city charter, and was informed by the civil service commission that he had passed the examination satisfactorily and was given such rating as would qualify him for said position; that thereafter he continued to hold the position for the required six months' probationary period, and thereafter, until May 30, 1931, at which time he was, without cause or previous warning or notice and without a hearing, discharged and removed from said office by John L. McClelland, the then city manager, and that he was denied the right of an appeal from said order to the mayor and council. It is further alleged that the office of quarantine officer is in the health department and under the direct supervision of the director of health; that said office is one of the offices classified and known as a civil service office under the provisions of the city charter, and that his removal was contrary to the express provisions of the charter.

Alternative writ was issued. For cause of refusal to restore plaintiff to office, defendants, in their answer and return, denied each and every allegation in the writ except such as are thereinafter admitted. They admitted that plaintiff, Hassman, was, until the 30th day of May, 1931, "a duly appointed and acting quarantine officer of the city of Oklahoma City." It was then alleged, in substance, that the position of quarantine officer held by plaintiff was an appointive position created by the city manager; that plaintiff was holding such position only by virtue of the creation thereof by the city manager; that plaintiff was removed by said officer for cause and for the best interest of the city, and that after his removal plaintiff had made no demand or request of the city manager for hearing as to the cause for his removal; that the action of the city manager is final and that the mayor and council were without power or jurisdiction under the charter to interfere by appeal to them or otherwise. They answered further that the issuance of a peremptory writ would be useless and unavailing, in that, since the petition was filed and the alternative writ issued, the position theretofore held by plaintiff had been abolished by the order and direction of the city manager, the chief administrative officer of the city, in the interest of economy. and because the position was no longer necessary, and that the duties theretofore performed by plaintiff could be and were being performed by an inspector employed in the same branch of the city government.

Upon the issues thus joined, evidence was taken and thereafter a peremptory writ was awarded.

There are eight assignments of error presented principally upon two propositions: That the court committed error in its judgment directing issuance of the peremptory writ, first, because there was never such a position as quarantine officer legally created; and, second, that if such position had ever existed, it had been abolished before the trial.

Section 7, art. 4, of the charter creates five departments, among which is the department of public safety, and that the city council may, by ordinance, create new departments or subdivisions thereof, combine or abolish existing departments, and distribute the functions thereof or establish temporary departments for special work.

By section 9 of the same article, the health department is included in the department of public safety. Article 3 creates a civil service commission to consist of three members. Section 3 of article 3 provides:

"The civil service commission shall immediately. after appointment, proceed to classify all places now existing or hereafter created in the department of public affairs, the department of accounting and finance, the department of public safety, the department of public works and in the department of public property, excepting the offices and places otherwise specified in this charter.

"The places so classified shall constitute the classified civil service of the city, and no appointment to any such place shall be made except in accordance with rules hereinafter mentioned."

The evidence shows that the position of quarantine officer had been placed within the classified civil service, and that plaintiff had been required to and had taken the examination in accordance with the rules of the civil service commission, and had served in the capacity of quarantine officer for some three years thereafter. The evidence also shows that he had served in the same position some three or four years prior to January 4, 1928, without having been required to take the examination. The city charter does not create the office. or posi-

tion of quarantine officer. Our attention has not been called to any ordinance, resolution, or legislative act, creating such an office or position, nor do we find any provision in the charter authorizing the creating of such an office or position by the head of any department or by the city manager. But for the admission of defendants in their answer and return that plaintiff "was until the 30th day of May, 1931, duly appointed and acting quarantine officer of the city of Oklahoma," we would not hesitate to say that plaintiff had wholly failed to prove the existence of, or his appointment to, such office. There may be an ordinance, not called to our attention, creating such an office or position. However, in view of the above admission in the answer of defendant, it was not necessary for plaintiff to introduce evidence showing the creation of the office or position nor his appointment thereto. The case appears to have been tried upon the theory that such office or position has been lawfully created.

The contention is made that if the office ever existed, it had been abolished between the date of plaintiff's discharge and the date of the trial, and, therefore, at the time of the trial, the office did not exist, and plaintiff could not be restored thereto.

The only evidence tending to show that the office had been abolished is that of John L. McClelland, the then city manager. He testified, in part:

"Q. Was anyone appointed to this office or position of chief quarantine officer upon the removal of Mr. Hassman? A. Yes, sir. Q. Who? A. Mr. Nash Setzer. Q. You may state whether or not after you appointed Mr. Setzer, or after Mr. Setzer was appointed, you took any action in reference to the abolition of this position held by Mr. Hassman? A. On June the 20th, I received a letter from Doctor Miles, stating that it was not necessary to have two in that department, and, upon his recommendation, I abolished the office. Q. That was the office held by Mr. Setzer? A. Yes, sir. Q. And also the office that had been held, or position, by Mr. Hassman? A. Yes, sir."

By the charter of Oklahoma City, all legislative power is vested in the mayor and city council. The creation of city offices not created by the city charter is a legislative function to be exercised by the mayor and council, unless the power is given in the charter to some other department. The city charter does not confer this power upon the city manager. As a general proposition the power to create an office carries with it the power to abolish it. The city

charter makes the city manager the chief ministerial officer of the city, but does not confer legislative power upon him. Nowhere in the charter is he given power to create or abolish an office. He is given exclusive power of appointment of all officers, except those the charter provides shall be elected or designated by the council. The incumbents of offices filled by the council are not subject to the civil service provisions of the charter.

Assuming, as the trial court apparently did, that the office in question has been lawfully created, we find no authority in the city manager to abolish it. If it be a fact, as now contended, that no such office was ever created, it follows as a matter of law that there is no office to which plaintiff may be restored. But from the record before us, we are unable to say that such office has never been created.

As to the power of the city manager to remove an officer or employee coming within the provisions of the classified civil service, the charter of Oklahoma City is by no means clear. It appears that when the original charter was adopted in 1911, there was contained therein the provision for a civil service commission. This provision now appears in the printed copy of the charter, as amended, as article 3. Section 11 of article 3 provides:

"The civil service commission is empowered to prescribe rules and regulations for reinstatement, promotion, transfer and removal in accordance with the provisions of this charter and not inconsistent therewith; to make regulations for the execution of these provisions, and such other rules as may be necessary for the proper conduct of their offices under this charter."

Section 13, art. 3, provides:

"All persons employed by the city subject to civil service examination shall be subject to removal from office by the mayor and commissioners, and may be suspended or discharged by the head of the department under which they are employed for neglect of duty, insubordination, or any of the causes in this charter named as grounds for removal. An appeal may be taken within five days to the board of commissioners, who shall have judicial powers to try and finally determine the matter. Any chief officer, superintendent, or foreman may suspend an employee for the reasons above named; but shall within 24 hours thereafter make a full report of such suspension to the commissioner in charge of the department under which he is employed, for approval or disapproval."

Section 15, among other things, provides that the civil service commission may make all necessary rules to carry out the pro-

visions of the chapter on civil service. Rule 9, adopted by the civil service commission, providing for the suspension and removal of officers and employees, follows literally the provisions of section 13, supra. The original charter provided for a mayor and city commissioners under what is known as the "Commission Form of Government." Each city commissioner was the head of a department, the mayor being the head of the department of public affairs. There was a commissioner for each of the other four departments. Before the charter was amended, the provisions for appointment, suspension, and removal were fairly clear. But, in 1926, the charter was amended so as to abolish the commission form of government, and provide what is termed a "managerial" form of government.

The charter, as amended, provides that the legislative branch of the city government shall consist of a city council composed of two councilmen from each ward and the mayor, and that all legislative powers of the city, save as reserved to the people thereof, shall be vested in the council; that the city council shall, as soon as it is organized, proceed to select a city manager and certain other municipal officers; that the city manager shall be the chief administrative officer of the city and shall have charge and supervision of all branches of the city service, except as otherwise provided in the charter; that he shall see to the faithful execution of all laws and ordinances of the state and city; that he shall appoint all officers and the officers whose selection is vested in the council, "except as provided by the civil service provisions of the charter." He is given power to dismiss any officer or employee appointed under him, "whenever, in his judgment," the interest of the city service so requires, except as otherwise provided by the civil service provision of the city charter.

Article 11 of the amended charter is one of the amendments adopted at the time the commission form of government was abolished. It provides that wherever in the charter, as amended, the words "board of commissioners" are used, and the legislative duty imposed or referred to, said words shall be construed to refer to the council or board of councilmen, and wherever ministerial duties are imposed or referred to, said words shall refer to the city manager, unless express provisions are elsewhere made to the contrary.

Thus the power of removal by the board of commissioners and by the respective heads of departments was abolished. While the section on removal in the civil service provision of the charter was retained, the offices, the incumbents of which were authorized to exercise that power, were abolished. The judicial powers theretofore conferred upon the board of commissioners to determine matters involved in an appeal to that board were not conferred upon the council or board of councilmen. Therefore, the power to remove by the board of commissioners was abolished. The power to suspend or remove by the heads of the various departments (commissioners), subject to review by appeal to the entire board, was likewise abolished. The only power to remove officers and employees appointed by the manager is vested in the city manager. Before the amendment all persons employed by the city subject to civil service examination were subject to removal by the mayor and commissioners without regard to cause. They could be suspended or discharged by the heads of the departments under which they were employed only for neglect of duty, insubordination, or any other cause named in the charter as grounds for removal. Appeal from such suspension or discharge by heads of departments was to the board of commissioners as a whole. Now, the entire power of suspension and removal is in the city manager, and this when in his judgment the interests of the city service so require. The removal need not be for cause.

Likewise, the right of appeal had been abolished, for there is now no tribunal or board having judicial powers to determine the matters involved in such appeals.

We, therefore, hold that the city manager has full power under the charter to discharge or dismiss officers and employees appointed by him, and that this power is final, and that no cause need be assigned therefor except that in the judgment of the manager the interests to the city require such dismissal.

The judgment is hereby reversed, with directions to enter judgment for the defendants.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur. BUSBY, J., absent.