E. L. HALL and Mike Adams, Appellees,

v.

Paul O'KEEFE, City Manager, City of Broken Bow, Oklahoma, Maxine Welch, Mayor, City of Broken Bow, Oklahoma, Garfield Johnson, Councilman, City of Broken Bow, Oklahoma, D. L. Hewitt, Councilman, City of Broken Bow, Oklahoma, Sam Whitehead, Councilman, City of Broken Bow, Oklahoma, Travis McIntyre, Councilman, City of Broken Bow, Oklahoma, Appellants.

No. 53465.

Supreme Court of Oklahoma.

July 8, 1980.

Rehearing Denied Sept. 15, 1980.

McClendon & McClendon, Broken Bow, for appellants.

Philip F. Horning, Bulla, Horning & Johnson, Oklahoma City, Gary L. Brock, McCombs, McWhirter & Brock, Idabel, for appellees.

IRWIN, Vice Chief Justice.

On February 15, 1979, E.L. Hall and Mike Adams were removed from their respective positions as Lieutenant and Chief, Broken Bow Police Department. Both officers were notified by letter from City Manager Paul O'Keefe that they had been dismissed from the force effective at five o'clock that evening. The notification to Chief Adams stated:

"This termination is for the good of the service. Your actions as Chief have not been in the best interest of the police force. They have adversely reflected on the City Council and the City Government."

Lieutenant Hall's notification stated:

"This termination is for the good of the service. In the performance of your duties, you have consistently displayed a lack of courtesy and tact in dealing with

the public. This has, and continues, to reflect adversely upon the City Government and the Police Department."

On February 23, 1979, Hall and Adams filed suit in the District Court, McCurtain County seeking a Writ of Mandamus ordering their reinstatement. The officers alleged that their dismissal occurred without adequate prior notice and hearing and therefore deprived them of due process of law. In addition, both officers alleged that their discharge one day prior to a "pre–negotiation meeting" between City officials and the local Lodge of the Fraternal Order of Police constituted an unfair labor practice prohibited by the Fire and Police Arbitration Act, 11 O.S.Supp.1979 § 51–101 et seq.[1]

Following a trial of the matter the district court issued a Peremptory Writ of Mandamus directing the City to reinstate Hall and Adams to their former positions with the Broken Bow Police Department. The court based its decision on the follow-

ing findings: (1) that the City's reasons for removal of the two officers were insufficient under the applicable statutory criterion for removal; (2) that the officers had a statutorily created property right in continued employment which, under Article 2, section 7 of the Oklahoma Constitution,[2] must be given greater procedural due process protection than accorded the officers by the City's action, and (3) that the timing of the removal of Hall and Adams constituted an unfair labor practice.

The City of Broken Bow is governed under a statutory council–manager form of city government.[3] As chief executive officer the city manager may, in the absence of a controlling statute or ordinance, remove, demote, suspend or lay off administrative officers and employees "when necessary for the good of the service" or "solely for the good of the service."[4] The district court determined, relying upon authority presented by the appellees,[5] that the phrase "solely

---

1. Lt. Hall was president of the local F.O.P. lodge and a member of its negotiating committee. Chief Adams was a member of the F.O.P. and "actively interested in this intention to negotiate."

   In a letter to City Manager O'Keefe dated February 6, 1979, and signed by E.L. Hall, the local F.O.P. lodge requested a "pre–negotiation meeting" with the City within 10 days, pursuant to 11 O.S.Supp.1979 § 51·101. There is no indication in the record that the City ever formally responded to this request, and in light of the City's contention that the local F.O.P. lodge was not as of that time a recognized bargaining agent, in compliance with 11 O.S.Supp.1979 § 51 103, it is not at all certain that any prenegotiation meeting would have actually been held. However, as the district court concluded, neither the propriety of the lodge's request nor its status under the Fire and Police Arbitration Act are material to the issue raised by officers Hall and Adams.

2. Art. 2, Sec. 7, Okl.Const. provides:
   "No person shall be deprived of life, liberty, or property, without due process of law."

3. 11 O.S.Supp.1979 § 10–101 et seq.

4. 11 O.S.Supp.1979 § 10–113 provides in part:
   "The city manager shall be the chief executive officer and head of the administrative branch of the city government. He shall execute the laws and administer the government of the city, and shall be responsible therefor to the council. He shall:

   1. Appoint, and when necessary for the good of the service, remove, demote, lay off or suspend all heads of administrative departments and other administrative officers and employees of the city except as otherwise provided by law. * * * "

   11 O.S.Supp.1979 § 10–120 provides:
   "Appointments and promotions in the service of a statutory council-manager city shall be made solely on the basis of merit and fitness; and removals, demotions, suspensions, and layoffs shall be made solely for the good of the service. The council by ordinance may establish a merit system and provide for its organization and functioning, and provide for personnel administration and regulation of personnel matters."

   The district court found, and the parties concede, that these are the only statutory provisions applicable in this case. The City of Broken Bow apparently had no ordinance governing the administration of personnel matters. The City had not established a Municipal Police Pension and Retirement system pursuant to 11 O.S.1979 Supp. § 50–101 et seq., and § 50–123 has no application in the case at bar.

5. *Anielo v. Marcello*, 91 R.I. 198, 162 A.2d 270 (1960); *Davis v. Cousineau*, 97 R.I. 85, 196 A.2d 153 (1963); *Mellor v. Leidman*, 100 R.I. 80, 211 A.2d 633 (1965); *State ex rel. Eckles v. Kansas City*, Mo.App., 257 S.W. 197 (1924).

for the good of the service" was synonymous with the term "cause," and that in any case the phrase stood as a criterion for removal, involving something more than the mere discretion of the city manager. In addition, the court found this, terminology sufficient to create a property interest within the meaning of Article 2, Section 7, of the Oklahoma Constitution, thereby invoking constitutional due process guarantees. We cannot agree.

Sections 10–113 and 10–120 of Title 11 do not fix any period of employment, nor do they in any way specify what may constitute a sufficient reason for discharge. They instead clearly vest in the city manager a discretionary authority to determine when and under what circumstances a personnel action will be "for the good of the service" and in the best interests of the city. The power to guide or limit the exercise of this authority is vested by section 10–120 in the city council: "The council by ordinance may establish a merit system and provide for its organization and functioning, and provide for personnel administration and regulation of personnel matters." [6]

In *Blinn v. Hassman*, 162 Okl. 1, 18 P.2d 881 (1933), Hassman, the quarantine officer of Oklahoma City, was awarded a peremptory writ of mandamus by the district court commanding city officials to reinstate him after he had been discharged by the city manager "without cause or previous warning or notice, and without a hearing." The position Hassman held was within the classified civil service established by the city charter. The civil service provision of the charter provided that the mayor and city commissioners could remove employees within the service without regard to cause, but that discharge by a department head could only be for specified causes and with a right of appeal to the Board of Commissioners. During Hassman's tenure as quarantine officer the city charter was amended

to reflect the city's new council–manager form of government. By these amendments the city manager was given the power to dismiss any officer or employee appointed under him, "when in his judgment the interest of the city service so requires," except as otherwise provided by the civil service provision of the city charter. In reversing the judgment of the district court, this court held that despite retention of the civil service provision in the amended charter, the power vested in the city manager concerning removal was not limited by that provision and therefore removal need not be for cause. The court did not construe the limitation contained in the grant of authority to the city manager to be the equivalent of a requirement that removal be for cause, and we do not believe that the limitation on the authority of a city manager contained in the phrase "solely for the good of the service" differs substantially.

Of course, the *Hassman* decision was rendered in an era when the employment and discharge of public employees was a prerogative of the sovereign based upon the narrow view that public offices were mere agencies which rarely conferred a property interest upon the officeholder. See 99 A.L.R. 336. The power to remove an employee appointed for an indefinite term was considered an implied part of the power to appoint him, and where the controlling charter, ordinances or statutes contained no provision to the contrary, such power was considered to be within the discretion of the appointing authority. *Jones v. Bayless*, 208 Okl. 270, 255 P.2d 506 (1953). Even where, by legislation, removal could only be for "good and sufficient cause" the discretion of the appointing authority was not substantially diminished. See *City of Wewoka v. Rodman*, 172 Okl. 630, 46 P.2d 334 (1935) (interest of a new fire chief in selecting his own men held good and sufficient cause for the removal of a fireman appointed by a

---

**6.** This court has repeatedly held that control over the terms and conditions of public employment by a chartered municipality is a matter primarily of local concern. *Midwest City v. Cravens*, Okl., 532 P.2d 829 (1975); *State ex rel. Brown v. Dunnaway*, 207 Okl. 144, 248 P.2d

232 (1952); *City of Wewoka v. Rodman*, 172 Okl. 630, 46 P.2d 334 (1935). We believe that even in the absence of an applicable ordinance, sections 10–113 and 10–120 must be viewed in light of that principle.

former chief); *Hunter v. Quick*, 183 Okl. 19, 79 P.2d 590 (1938) (same); *Goodwin v. Oklahoma City*, 199 Okl. 26, 182 P.2d 762 (1947) (good and sufficient cause not limited to misconduct or inadequacy of employee—membership in F.O.P., considered detrimental to service by city manager, held to be sufficient cause). And further exemplifying this strict view concerning public employers' power over personnel matters, the court in *Jones, supra,* held that the provisions of the Tulsa city charter precluding policemen from being removed except for cause and after written notice and an opportunity to be heard did not apply to demotions, promotions, or transfers, stating that "such power should be guarded carefully for many sound reasons . . . and for an employee to be held within the protection of any specific legislative restriction of such power, he must definitely show that his position comes within the specific terms of such restriction."

It was within this general context that the 1949 legislature enacted sections 10–113 and 10–120 (neither provision has been materially altered since). Certainly the legislature could not have then meant a limitation so vague as "for the good of the service" to confer upon a city employee a property interest requiring due process protections unavailable to him under more explicit guarantees. Rather, it seems that the legislature left the personnel matters of statutory council–manager city governments to the judgment of the city manager, subject primarily to control by the council through appropriate ordinances, and prohibiting only these decisions which are clearly arbitrary or capricious.

More recently the law has recognized that the terms of employment established by an employer or by contract may create a sufficient expectancy of continued employment to constitute a property interest, which must be afforded constitutionally guaran-

teed due process. In *Umholtz v. City of Tulsa*, Okl., 565 P.2d 15 (1977), this court examined a provision of the Charter of the City of Tulsa which provided that all city employees would hold their respective positions "during good behavior" and would be "suspended without pay, demoted or removed from the same only for good and sufficient cause." The court found that this language did confer a property right in continued employment, defined and limited, however, by the procedural language of the provision. This "limited right" invoked the minimal procedural protection afforded under Article 2, Section 7 of the Oklahoma Constitution–a right to receive a meaningful explanation of what is being done to the individual employee.

We hold that sections 10–113 and 10–120 do not create a property interest in continued employment within the meaning of Article 2, Section 7 of the Oklahoma Constitution. And the officers do not contend that their discharge or the manner in which they were discharged imputed any dishonesty, imposed any stigma or impinged upon any other constitutionally protected interests. The notices given officers Hall and Adams were not insufficient as a matter of law. The court erred in holding the city's reasons insufficient.

While officers Hall and Adams had no constitutionally protected right to continued employment, they did have a right to engage in the collective bargaining and other lawful activities of the F.O.P., without intimidation or coercion of any kind by city officials under the provisions of the Fire and Police Arbitration Act, 11 O.S.Supp. 1979 § 51–101 *et seq.* The district court found that because the discharge of Hall and Adams occurred only one day prior to proposed city F.O.P. negotiations, the city's action constituted an unfair labor practice prohibited by 11 O.S.Supp.1979 § 51–102(6).[7]

7. 11 O.S.Supp.1979 § 51-102(6) provides that " 'Unfair labor practices' for the purpose of this article shall be deemed to include but not limited to the following acts and conduct. . . . ."

Section 6a specifies a number of prohibited practices by corporate authorities which need not be considered in detail here.

Since the parties did not raise the issue of standing, in light of the exclusion of chiefs of police and administrative assistants from the

We must assume that since the court found the reasons given by the city for the terminations were "insufficient," the timing of the terminations acquired a heightened significance. The record does not disclose even the suggestion of some link between the termination of these officers and their association with the proposed negotiations beyond the close proximity in time of these events. While it is true that termination of officer Hall may have caused some direct and adverse impact on the negotiations because of his position as a member of the F.O.P. negotiations team, the same cannot be said in regard to the termination of Chief Adams, whose only connection to the proposed meeting was his support of the proposed negotiations.

To establish a claim that the discharge of an officer by a corporate authority violates section 51–102(6) of the Fire and Police Arbitration Act, the officer must show that his involvement in the activities protected by the Act was a substantial motivating factor in the decision to terminate his employment. A mere showing that the protected activities would be adversely affected by discharge is not sufficient to meet this burden. The officer cannot, by engaging in such conduct, shield himself from a removal which would occur in the absence of that conduct, nor can he by his involvement in protected labor activities force his employer to prove some more substantial grounds for removal than would have been required otherwise. See *Mt. Healthy School Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In this case there was no evidence submitted concerning what weight, if any, was given to the labor activities of officers Hall and Adams in reaching the decision to terminate their employment with the City of Broken Bow. Indeed, all of the evidence was directed toward the support or rebuttal of other various reasons given by the city manager for that decision.[8]

We hold, therefore, that the evidence was wholly insufficient to support the district court's finding that the discharge of officers Hall and Adams constituted an unfair labor practice under 11 O.S.Supp.1979 § 51–102(6).

JUDGMENT OF THE DISTRICT COURT REVERSED. REMANDED WITH INSTRUCTIONS TO DISSOLVE THE WRIT AND DISMISS.

LAVENDER, C. J., and WILLIAMS, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.

---

provisions of the Fire and Police Arbitration Act, § 51 102(1), we assume that the titles given officers Hall and Adams were not intended to bring them within the exclusion.

8. City manager O'Keefe testified that he based his decision to discharge these two officers on the fact that a large number of complaints had been made against them for several months prior to their discharge, and on what he perceived to be an "overzealous" attitude in the performance of their duties. The officers essentially claimed that the complaints made against them were unjustified and that much of the present controversy surrounding them was due to conflict for various reasons between themselves and at least some members of the council. In any case, the record does not support a finding that the decision to discharge the officers was arbitrary or capricious, or motivated by some reason other than dissatisfaction with job performance.