### Franklin Cty. Sheriff's Dept.
### v.
### SERB
*[Cite as 5 AOA 296]*

*Case No. 89AP-792*
*Franklin County, (10th)*
*Decided August 28, 1990*

*John W. Ferron, and Susan Porter, Schottenstein, Zox & Dunn, for Appellant.*

*Anthony J. Celebrezze, Jr., Attorney General, and Barbara A. Serve, for State of Ohio, State Employment Relations Board, Appellee.*

*Michael J. Hunter, Cloppert, Portman, Sauter, Latanick & Foley, for Fraternal Order of Police, Capital City Lodge No. 9., Appellee.*

MARTIN, J.

This is an appeal by the Franklin County Sheriff's Department from a judgment of the Franklin County Court of Common Pleas which affirmed two separate orders of the State Employment Relations Board ("SERB"). SERB had ordered the Franklin County Sheriff's Department to cease and desist from certain alleged unfair labor practices and to take certain affirmative action with respect to those charges. Subsequently, while an appeal was pending before the common pleas court with respect to the initial order, SERB issued an additional order finding that the Franklin County Sheriff's Department was in violation of its earlier order.

Appellant, the Franklin County Sheriff's Department ("department"), is a "public employer" as defined by R.C. 4117.01(B). Appellee, the Fraternal Order of Police, Capital City Lodge No. 9 ("FOP"), is "an employee organization" as defined by R.C. 4117.01(D). The FOP is the exclusive representative of all full-time uniformed deputy employees of the department below the rank of corporal. For all periods of time relevant to this appeal, a collective bargaining agreement was in effect between the FOP and the department.

The department employs approximately five hundred seventy- seven employees, four hundred sixty-two of whom are deputy sheriffs. The majority of the deputies work in the county jail. Under the collective bargaining agreement between the FOP and the department, the deputies are classified as Deputy 1, Deputy 2, and Deputy 3, all of whom are paid under the same scale. A Deputy 1, unlike a Deputy 2 or Deputy 3, is not required to hold a valid Ohio Peace Officer Training Certificate, may not carry firearms or make arrests, and may not wear a uniform to or from work.

The sheriff also to grants auxiliary commissions upon application. In order to be commissioned as an auxiliary deputy, it is necessary that the applicant hold a valid Ohio Peace Officer Training Certificate, which is maintained by qualifying for weapons. An auxiliary deputy is a volunteer and performs such functions for the department as patrol duty, serving process, jail

work, 911 service and other communications work. When the department became self-insured with respect to its liability coverage, the county commissioners in 1985 authorized the sheriff to appoint only two hundred auxiliary deputies, of which appointments only forty to fifty were granted to deputies employed within the department. A Deputy 1 who holds an auxiliary commission is informally and unofficially designated a Deputy 1A, which enables the deputy to wear his uniform to and from work, to transport prisoners outside the jail, and to act as a special duty officer for private employers. There is no Deputy 1A classification under either the collective bargaining agreement or under civil service rules.[1]

During the period relevant to this appeal, two Deputy 1As and a Deputy 2 filed grievances pursuant to the provisions of the collective bargaining agreement, which grievances were denied at each of the four levels provided by the agreement. The three deputies, via the FOP, then requested that the grievances be submitted to arbitration. While these grievances were pending arbitration, the sheriff notified the deputies on April 9, 1987 that their auxiliary commissions were revoked effective April 10, 1987. The FOP then filed a grievance on behalf of the two deputy 1As seeking reinstatement of their auxiliary commissions. Subsequently, in a May 1, 1987 newsletter, the sheriff indicated that all auxiliary commissions currently held by Deputy 1As would be cancelled.

The FOP, on June 15, 1987, filed with SERB an unfair labor practice charge against the department. SERB found probable cause to believe that the department had committed an unfair labor practice and issued a complaint on January 23, 1988. The matter proceeded to a hearing before a hearing officer of SERB on March 30, 1988. The hearing officer issued a "proposed order" on October 14, 1988. The hearing officer concluded that the department had engaged in various unfair labor practices, in violation of R.C. 4117.11(A)(1), (3) and (8), when it revoked the auxiliary commissions of the two deputies for exercising the rights guaranteed by R.C. Chapter 4117. The hearing officer recommended that the board issue a cease and desist order directing the department to refrain from violations of R.C. 4117.11(A)(1), (3) and (8). The hearing officer also recommended that SERB direct the department to take affirmative action by posting a notice to employees of the department that it would abide by the cease and desist

order, that it immediately reinstate the auxiliary commission of one of the deputies, and that it reimburse the two Deputy 1As for actual economic losses occasioned by the revocation of the auxiliary commissions. SERB adopted these proposals on December 22, 1988.

The department then filed an appeal in the Franklin County Court of Common Pleas pursuant to R.C. 4117.13 and 119.12. By entry dated February 24, 1989, the common pleas court remanded the matter to SERB to take additional evidence regarding the department's decision in January 1989 not to renew all auxiliary commissions held by Deputy 1As. The common pleas court also stayed the effect of the December 22, 1988 order with respect to the affirmative action required of the department.

Upon remand, an evidentiary hearing was conducted before SERB in March 1989, which hearing resulted in the issuance of a March 30, 1989 order concluding that the department was in violation of the December 22, 1988 cease and desist order. The department then filed with the court of common pleas, on April 14, 1989, an amended appeal seeking review of the March 30, 1989 order in addition to the December 22, 1988 order. By entry dated April 25, 1989, the common pleas court continued in effect its stay of the December 22, 1989 order with respect to the affirmative action required of the department, but provided that the department was authorized to issue auxiliary commissions under certain prescribed guidelines.

These matters were heard before the trial court on June 1, 1989. The common pleas court, on June 7, 1989, entered a final judgment which affirmed the orders issued December 22, 1988 and March 30, 1989.

The department now appeals and sets forth the following assignments of error:

"1. The Court of Common Pleas erred in its February 24, 1989 Decision in which it directed the State Employment Relations Board ('SERB') to take additional evidence concerning the Department's revocation of auxiliary commissions after SERB had already issued its December 22, 1988 Final Order.

"2. The Court of Common Pleas erred when it temporarily enforced part of SERB's Order to the effect that the Franklin County Sheriff's Department ('Department') was to reinstate and refrain from suspending the auxiliary commissions held by some of the Department's employees, except for reasons other than employees'

failure to participate in 16 hours of in-service training each month.

"3. The Court of Common Pleas erred when it found that the Orders of SERB issued on December 22, 1988 and May 30, 1989 were supported by substantial evidence and were in accordance with the law.

"4. The Court of Common Pleas erred when it found that the Department had no right under R.C. 149.43 to obtain SERB's investigatory files from the Attorney General's Office or SERB.

"5. The Court of Common Pleas erred when it found that the Department had no right under R.C. 4117.17 to obtain SERB's investigatory files from the Attorney General's Office or SERB.

"6. The Court of Common Pleas erred when it determined that the Department suffered no prejudice by SERB's refusal to provide the Department, upon the Department's request, the contents of SERB's investigatory file.

"7. The Court of Common Please [sic] erred in failing to find that the Department's constitutional rights were violated by SERB's refusal to provide the contents of SERB's investigatory file.

"8. The Court of Common Pleas erred when it determined that the 'in part' standard adopted by SERB under the provisions of R.C. Chapter 4117 was appropriate.

"9. The Court of Common Pleas erred in failing to find that SERB's Orders of December 22, 1988 and March 30, 1989 were not supported by substantial evidence and should be reversed."

Initially, the department argues, by way of its fourth, fifth, sixth and seventh assignments of error, that the common pleas court erred when it affirmed that portion of SERB's order which denied the department access to the contents of the file compiled by SERB during its investigation of the unfair labor practice charge. The department initially maintains that R.C. 4117.17 required SERB to open its investigatory file upon request. Alternatively, the department also argues that R.C. 149.43, the Ohio Public Records Act, does not withdraw from public inspection the objective facts and information which are contained within the investigatory file compiled by SERB. The department contends that the burden is upon SERB to prove that the records fall within any of the enumerated exceptions to R.C. 149.43. Since SERB has previously produced similar records in related proceedings at the department's request, it is the department's position that SERB cannot meet its burden with respect to the records involved in this case.

Finally, the department argues that its due process and equal protection rights, guaranteed by the Ohio Constitution, require the production of the requested documents.

In response to the department's initial contention regarding its right of access to the records in question pursuant to R.C. 4117.17, SERB contends this statute is the only statute applicable in this cause and that the department has no right under R.C. 4117.17 to compel production of the requested documents. It is SERB's position that because R.C. 4117.17 is more specific than R.C. 149.43, the more specific statute applies. Since R.C. 4117.17 does not specify records which are produced during the investigation of an unfair labor practice charge, SERB argues that the doctrine of *expressio unius est exclusio alterius* compels the conclusion that the records sought by the department are not public. SERB buttresses this argument with its assertion that R.C. 4117.17 embodies a legislative intent to shield from public inspection information acquired during the investigation of an unfair labor practice charge. As support for this position, SERB relies on the opinion of the United States Supreme Court rendered in *N.L.R.B. v. Robbins Tire and Rubber Co.* (1978), 437 U.S. 214.

The FOP maintains that R.C. 4117.17 is inapplicable to this case since SERB has promulgated an administrative regulation restricting access to the information sought by the department. See Ohio Adm. Code Section 4117-1-02(G).

Initially, this court notes the parties' arguments relate solely to the provisions of R.C. 4117.17 and 149.43. No argument is made, and this court does not address, any rights of discovery which the department may have otherwise. See, *e.g., State, ex rel. Multimedia, Inc., v. Whalen* (1990), 48 Ohio St. 3d 41, 42; *Henneman v. Toledo* (1988), 35 Ohio St. 3d 241; and *Sanford v. Kelly* (1989), 44 Ohio App. 3d 30.

R.C. 1.51 provides:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

Given this statutory mandate to reconcile the provisions of R.C. 4117.17 and 149.43, the court cannot accept the argument by SERB that

R.C. 4117.17 prevails over the provisions of R.C. 149.43. To reach the result desired by SERB, this court would be required to insert the word "only" before the items listed in R.C. 4117.17. However, this court will not read into R.C. 4117.17 a word which would create a conflict with R.C. 149.43. R.C. 1.51 requires this court to construe both statutes in a manner which gives effect to both.

Moreover, even if R.C. 4117.17 alone is applied, that section indicates that the records sought by the department are public. The phrase "other proceedings instituted by SERB" clearly would include SERB's investigation of an unfair labor practice charge.

Finally, contrary to SERB's legislative intent argument, R.C. 4117.17 contemplates a rule of openness, rather than one of confidentiality. This court is aware of the policy concerns expressed by the United States Supreme Court in opting for a blanket rule of confidentiality with respect to witnesses' statements made to the National Labor Relation Board in the course of an unfair labor practice investigation. *Robbins Tire and Rubber Co., supra,* at 236-243. However, the very fact that the General Assembly has undertaken to enact R.C. 4117.17 suggests a legislative intent to make public, rather than to keep confidential, records maintained by SERB. Moreover, the long-standing policy of the National Labor Relations Board to maintain the confidentiality of a witness's statement prior to an unfair labor practice hearing, which policy predated the enactment of the freedom of Information Act at issue in *Robbins Tire and Rubber Co.,* is simply not present in this state. Rather, the long-standing policy in this state has been one to keep open records maintained by public agencies. In any event, the General Assembly has accommodated any concern expressed by SERB via the exceptions specified in R.C. 149.43(A).

With respect to the argument advanced by the FOP regarding the applicability of Ohio Adm. Code 4117-1-02(G), we find such argument to be without merit. That section of the Ohio Administrative Code provides a mechanism for keeping affidavits and investigatory materials confidential upon the request of the submitting party. Despite this provision, there is no evidence in the record that SERB had been requested to keep confidential any of the materials sought by the department. As such, this court has no occasion to consider the provisions of the administrative rule.

As noted above, even though R.C. 4117.17 specifies that the records sought by the department are public, R.C. 149.43(A) nevertheless reposes in SERB the authority to withhold from public scrutiny any record which falls within any of the enumerated exceptions to subsection (A). R.C. 149.43(A) provides in pertinent part:

"As used in this section:

"(1) 'Public record' means any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except *** trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law.

"(2) 'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent the release of the record would create a high probability of disclosure of any of the following:

"(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

"(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose his identity;

"(c) Specific confidential investigatory techniques or procedures or specific in investigatory work product;

"(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

"***

"(4) 'Trial preparation record' means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney."

In response to the department's contentions regarding the availability of the records under R.C. 149.43, SERB argues that material accumulated in the course of an unfair labor practice investigation is trial preparation work and specifically exempted from disclosure via R.C. 149.43(A)(4). The FOP, besides relying upon the "trial preparation record" exception to R.C. 149.43, also maintains that the records fall

within the "confidential law enforcement investigatory record" exception to that statute.

The parties do not challenge the characterization of the materials accumulated by SERB during the course of its investigation as "law enforcement investigatory records." We find such characterization appropriate since SERB is required to investigate any charged violation of R.C. 4117.11. R.C. 4117.12(B). As such, the investigation undertaken by SERB was based upon specific suspicion of illegal conduct. Cf. *State, ex rel. Natl. Broadcasting Co., v. Cleveland* (1988), 38 Ohio St. 3d 79, 83, and *State, ex rel. Polovischak, v. Mayfield* (1990), 50 Ohio St. 3d 51. However, the burden of demonstrating that law enforcement investigatory records are exempted from disclosure by R.C. 149.43(A) (2) is upon the governmental agency refusing to release the records. *Natl. Broadcasting Co., supra*, at paragraph two of the syllabus. The exception provided by R.C. 149.43(A) (2) for confidential law enforcement investigatory records is an exception to the general rule of disclosure which otherwise governs law enforcement investigatory records. *Id.* at paragraph one of the syllabus. When a public record is claimed to be excepted from disclosure, a reviewing court is required to scrutinize those records, redact the excepted information and release the information which remains. *Id.* at paragraph four of the syllabus.

Here, the records sought by the department were not scrutinized by the common pleas court. Given the case by case nature of the "confidential law enforcement investigatory records" exception to R.C. 149.43(A), the common pleas court erred in failing to perform an *in camera* inspection of the requested documents in order to ascertain whether the records contained information which was confidential and excepted by R.C. 149.43(A)(2).

Similarly, with respect to the "trial preparation records" exception provided by R.C. 149.43(A) (4), the common pleas court was required to scrutinize the records sought in order to determine whether the records qualified as trial preparation records in anticipation of litigation. *Natl. Broadcasting Co., supra*, at 85. There is simply no evidence before this court which would enable us to find that the reports sought were prepared specifically for the unfair labor practice hearing before SERB. Moreover, as noted above, no blanket of confidentiality will be wrapped around SERB investigatory files prepared in the course of an unfair labor practice investigation

given the sweep of this state's public records act. Cf. *Barton v. Shupe* (1988), 37 Ohio St. 3d 308. Accordingly, the department's fourth, fifth and sixth assignments of error are sustained. However, in light our ruling upon these assignments of error, any constitutional right to such records enjoyed by the department has not been prejudiced. Accordingly, the seventh assignment of error is overruled.

Under the department's second, third, eighth and ninth assignments of error, error is predicated upon the trial court's affirmance of SERB's finding that the department violated R.C. 4117.11(A)(1), (3) and (8). While the department's arguments under these assignments of error are not organized in any particular fashion, the issues presented concern the scope of SERB's jurisdiction over alleged unfair labor practices, the proper evidentiary standard to be employed by SERB in unfair labor practice proceedings, the quantum of evidence actually adduced with respect to the alleged violations, and the type of relief SERB may fashion to remedy an unfair labor practice.

The department contends, via its argument B, that SERB lacked jurisdiction over the alleged unfair labor practices because the sheriff has the sole statutory authority to grant or revoke auxiliary commissions. It is the department's position that R.C. 311.04 vests in the sheriff alone the absolute power to control the appointment of auxiliary deputies and SERB may not review the sheriff's conduct with respect to those appointments.

Even if it is assumed that only the sheriff may grant or revoke auxiliary commissions, R.C. 4117.12 vests in SERB authority to review conduct which constitutes a violation of R.C. 4117.11. Since the determination of whether particular conduct constitutes an unfair labor practice rests largely upon the facts giving rise to the complaint, the courts must afford due deference to SERB's interpretation of R.C. 4117.11. Cf. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St. 3d 257, paragraph two of the syllabus.

SERB concluded that since the sheriff's conduct arguably fell within the parameters of R.C. 4117.11, its jurisdiction had properly been invoked. We find this conclusion appropriate. Specifically, regardless of the sheriff's power to act unilaterally in revoking the auxiliary commissions, he may not wield to this power to "[i]nterfere with, restrain or coerce employees in

the exercise of the rights guaranteed in Chapter 4117. *** " R.C. 4117.11(A)(1).

As a corollary to its initial argument challenging SERB's jurisdiction, the department also argues under argument C that SERB lacked jurisdiction over this cause because persons holding auxiliary commissions are not public employees. Rather, the department contends that persons holding auxiliary commissions are volunteers. Accordingly, the department concludes that SERB had no authority to consider the sheriff's conduct with respect to such volunteers.

Whatever merit the departments argument may have with respect to SERB's jurisdiction over persons who are not public employees, it has no application to this case. The unfair labor practice charge was filed on behalf of several persons who not only held auxiliary commissions, but who were also public employees within the bargaining unit of the department. The charge alleged that the sheriff's conduct in revoking the commissions was directed only at employees who were processing grievances to arbitration under the terms of the collective bargaining agreement. Regardless of whether auxiliary deputies are employees for purposes of R.C. Chapter 4117, the deputies whose commissions were revoked in this case were employees of the department.

To the extent the department challenges SERB's jurisdiction to consider the revocation of the commissions as a violation of R.C. 4117.11(A)(3), since the auxiliary commissions were not a term or condition of employment, that argument is untenable in light of the holding rendered in *Lorain City Bd. of Edn., supra.* In that case, the Supreme Court concluded that SERB's determination of what constitutes a term or condition of employment, albeit for purposes of R.C. 4117.08(C), is entitled to due deference if supported by substantial evidence since such determination is generally a factual question. *Id.* at 260. Here, SERB's determination that the auxiliary commissions were a term or condition of employment was supported by substantial evidence.

The appointment to auxiliary deputy required a valid Ohio Peace Officer Training Certificate, which aided the deputy in advancing from the rank of Deputy 1 to that of Deputy 2 or 3. Auxiliary deputies were identified on the department roster as "lAs" and allowed to wear full uniforms to and from work. Additionally, auxiliary deputies were entitled to escort prisoners without the assistance of a Deputy 2 or 3 during regular duty hours. The commission enabled Deputy lAs to perform special duty work, the assignment of which was controlled by the department according to rank. Auxiliary deputies could be disciplined by the department for conduct which occurred while on special duty. Finally, the department controlled the pay rate for auxiliary deputies and regulated the maximum number of hours a regular deputy could devote to special duty assignments per week. These factors support SERB's determination that the auxiliary commissions were a term or condition of employment. SERB could properly assert jurisdiction over this matter.

The department next contends under argument C that SERB employed an erroneous standard of proof in concluding that an unfair labor practice had occurred. More particularly, the department asserts that once the evidence adduced by SERB established a violation of either R.C. 4117.11(A)(1) or 4117.11(A)(3), an opportunity must be afforded the employer to demonstrate that the adverse action would have been warranted in any event because of the employee's unprotected conduct. Error is predicated upon SERB's finding of an unfair labor practice which was based upon evidence indicating the adverse action was motivated only *in part* by an illegitimate objective. As support for this position, the department relies upon the holding rendered in *N.L.R.B. v.* Transportation Management Corp. (1983), 462 U.S. 393.

In *Transportation Management Corp.*, the United States Supreme Court upheld the use by the National Labor Relations Board ("NLRB") of the test urged by the department. *Id.* at 400. Recognizing that the NLRB was entitled to deference in construing the requirements of the National Labor Relations Act, Section 151, *et seq.*, Title 29, U.S. Code, the Supreme Court concluded that "'the Board's construction here, while it may not be required by the Act, is at least permissible under it *** .'" *Id.* at 402-403 (quoting *N.L.R.B. v. J. Weingarten, Inc.* (1975), 420 U.S. 251, 266-267). Because such burden of proof was reasonable in light of the employer's misconduct, the Supreme Court approved the NLRB practice. *Id.*

In this case, SERB found only that the department was motivated by an illegal reason in revoking the commissions which resulted in the alleged violations of R.C. 4117.11(A)(1) and 4117.11(A)(3). SERB found that any legitimate reasons advanced by the department for the adverse action were purely pretextual. As such, this case presents this court with no occasion to consider the validity of the "in part" test used by

SERB, since no "mixed motive" is extant. See *In Re Adena Local School Dist. Bd. of Ed.* (Dec. 29, 1989), SERB 89-034, 1989 SERB 3-328. Cf. *Wright Line* (1980), 251 N.L.R.B. 1083, 1084, enfor'd. (C.A.1, 1981), 662 F.2d 899, certiorari denied (1982), 455 U.S. 989. Accordingly, the department suffered no prejudice in this case by virtue of SERB utilizing an "in part" test.

By way of argument D, the department maintains that the trial court erred in affirming SERB's December 1988 order with respect to the R.C. 4117.11(A)(1) and 4117.11(A)(3) violations. Essentially, the department contends that SERB's decision is not supported by substantial evidence.

In reviewing a determination by SERB that an unfair labor practice has occurred, the common pleas court must affirm SERB's finding with respect to the facts "*** if supported by substantial evidence, on the record as a whole *** ." R.C. 4117.13(B). The role of an appellate court upon review of an administrative order is generally limited to the determination of whether the trial court has abused its discretion in the performance of its review functions. *Lorain City Bd. of Edn., supra,* at 260- 261. As this court has stated, in the context of an administrative review, an abuse of discretion requires more than an error in judgment, but "*** implies a decision without a reasonable basis, one which is clearly wrong." *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159, 162.

R.C. 4117.11(A) makes it an unfair labor practice for any public employer to:

"(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances; [or]

"***

"(3)Discriminate in regard to hire [hiring] or tenure of employment or any term or condition of employment on the basis of the exercise of rights guaranteed by Chapter 4117. of the Revised Code. ***"

Generally, once SERB determines that a violation of R.C. 4117.11(A) (3) has occurred, such finding will also support a finding that the public employer has violated R.C. 4117.11(A)(1) as well. This practice is consistent with NLRB practice. See Modjeska, NLRB Practice (1983) 123, Section 2.4.

The sole dispute raised in this case concerns the quantum of evidence adduced regarding the department's anti-union animus. Such animus is generally an integral part of a prima facie case in an unfair labor practice proceeding under R.C. 4117.11(A)(3). See *In Re Adena Local School Dist. Bd. of Ed., supra,* and *In Re Warren County Sheriff* (Sept. 28, 1988), SERB 88-014, 1988 SERB 3-71.

Since direct evidence of an employer's motivation is rarely available, proof of this element is typically indirect. Factors used by SERB to assess motivation include:

the employer's delay in taking disciplinary action after being apprised of employee misconduct, during which the delay the employee engages in protected activity, see *In Re Adena Local School Dist. Bd. of Ed., supra*; the employer's departure from routine disciplinary procedure, see *In Re Ohio Dept. of Transp., supra*; the employer's failure to provide the employee with a written warning for misconduct prior to taking disciplinary action, see *id.*; disciplinary action taken by the public employer which immediately follows the employee's exercise of protected rights, see *In Re Belmont County Engineer* (July 5, 1988), SERB 88-007, 1988 SERB 3-31; the public employer gives explanations for the disciplinary action which shift and change, see *In Re Adena Local School Dist. Bd. of Ed., supra*; and, the employer's conduct evinces a pattern or plan of anti-union sentiment, see *In Re Belmont County Engineer, supra.* Cf. *General Drivers and Helpers Union v. Brown Cty.* (S.D. 1978), 269 N.W.2d 795, 799-800.

Upon review of the record concerning the December 1988 order issued by SERB, this court concludes that the trial court abused its discretion in finding the order to be supported by substantial evidence on the record as a whole. According to the parties' stipulations, employees whose commissions were revoked were exercising their rights under the collective bargaining agreement to seek arbitration of their grievances. Pursuant to the terms of the agreement, the department was aware of this activity and had selected arbitrators in two of the cases. While these requests were pending, the sheriff notified each employee that their auxiliary commissions had been revoked.

Concerning the evidence adduced regarding the department's motive for revoking the commissions, SERB points to several facts which it contends support the trial court's decision. Specifically, SERB maintains that evidence of

anti-union animus includes the proximity between the adverse conduct and the protected activity, the differing reasons offered by the department for revoking the commission of one deputy, and that the sheriff told one deputy "no arbitrator was going to tell him what to do."

This court cannot agree that the timing of the revocations was in such close proximity as to warrant an inference of discriminatory intent. Cf. *Akron Bd. of Edn. v. State Emp.* Relations Bd. (1987), 38 Ohio App. 3d 95, 96-97. The intervals between the requests for arbitration and the revocations ranged from four months to three weeks. Generally, to warrant an inference of improper motive, the timing of the discipline must be in *close* proximity to the protected activity. See, *e.g., General Drivers and Helpers Union, supra,* at 801, 802, and *Bd. of Selectmen of Natick v. Labor Relations Comm.* (1983), 16 Mass. App. 972, 453 N.E.2d 466; see, also, *Maine State Emp. Ass'n. v. State Dev. Office* (Me. 1985), 499 A.2d 165; *Babcock v. Labor Relation Comm.* (1982), 14 Mass. App. 650, 441 N.E.2d 786, and *Hall v. O'Keefe* (Okla. 1980), 617 P.2d 196.

Moreover, the most that can be inferred from the sheriff's statement - that "no arbitrator was going to tell him what to do" - is that the sheriff harbored animosity to the arbitration process. To further infer from such statement anti-union bias would require the impermissible stacking of an inference upon an inference. This is especially true when the statement is viewed in context. Specifically, the deputy stated:

"Basically the fact that in my meeting in step 4 the first thing the sheriff indicated was that no arbitrator was going to tell him what to do either way, that if I won the--won my grievance he would appeal it anyway and tie it up for years, and the basic fact that just a few weeks after I filed my grievance to arbitration my auxiliary commission was pulled, three other officers who were in arbitra--two other officers who were in arbitration, those were pulled, we are the only ones that were pulled, and were given no reason why they were pulled. Just that they were pulled." (Tr. 46-47.)

Viewed in the context it was made, the statement attributed to the sheriff referred only to the grievance then under consideration and suggested only a desire to interfere with that particular grievance. Such isolated statement made only once during the course of one of the three grievances, followed by the revocation of the commissions, cannot substantiate SERB's finding that the revocations violated R.C. 4117.11(A)(3).

Similarly, that two different reasons were given for the revocation of one commission may support an inference of pretext, but does not support a finding of discriminatory intent. Indeed, the reasons advanced by the department were neither exclusive nor contradictory. Moreover, the deputy affected admitted that he had not donated the prescribed volunteer time riding in a cruiser.

Finally, the court is compelled to note the absence of other evidence regarding anti-union bias. No attempt was made to demonstrate discrimination based upon preferential treatment of Deputy 1As who did not utilize the grievance system; no evidence was offered to suggest the department deviated from standard practice in revoking the commissions; no evidence was introduced regarding any pattern or practice of discrimination based upon the exercise of protected conduct. Moreover, the unrebutted evidence offered by the department was that no auxiliary deputy was ever given a reason for revoking a commission and that the department could revoke the commissions at any time for any or no reason, unless such revocation was for a prohibited purpose.

Given the paucity of evidence regarding anti-union animus revoking the commissions, the court concludes that the trial court was clearly wrong in finding the R.C. 4117.11(A) (1) and 4117.11(A) (3) violations supported by substantial evidence on the record as a whole. Argument D is well-taken.

Under their argument E, the department contends that the common pleas court erred in finding that the evidence established a violation of R.C. 4117.11(A) (8). This contention is based upon two arguments, both of which were previously rejected. Initially, the department contends that because the auxiliary commissions were not a term or condition of employment, any adverse conduct taken by the department with respect to such commissions could not be considered an unfair labor practice as a matter of law. However, as this court has previously indicated with respect to the argument made by the department attacking SERB's jurisdiction under argument C, SERB's determination that the commissions were a term or condition of employment is supported by substantial evidence. The department's second contention - that because persons holding auxiliary commissions are not employees, the FOP cannot represent them - was likewise rejected in our consideration of argument C. The deputies whose commissions were revoked were

employees and the subject of the unfair labor practice allegations.

However, contrary to the arguments of both SERB and the FOP, the finding of an R.C. 4117.11(A)(8) violation is not supported by substantial evidence on the record as a whole. Whatever merit there may be to the argument that the sheriff's newsletter statement constitutes an attempt to cause an employee organization to violate its duty of fair representation, SERB did not premise its finding of an R.C. 4117.11(A)(8) violation upon the newsletter statement. Rather, SERB, by its adoption of its hearing officer's conclusions of law, found only that the R.C. 4117.11(A) (8) violation was based upon the revocation of the commissions of the two deputies who sought arbitration of their grievances and the attempted revocation of the commission of another deputy who processed her grievance to arbitration. While the hearing officer appears to have premised her analysis of the R.C. 4117.11(A)(8) violation upon the newsletter statement, SERB did not specifically adopt the analysis of the hearing officer. See Ohio Adm. Code 4117-1-15(B). Accordingly, the trial court abused its discretion in concluding that there was substantial evidence on the record as a whole to support SERB's finding of a violation of R.C. 4117.11(A)(8).

Finally, the department contends by way of argument F that the common pleas court erred in affirming SERB's December 19, 1988 order since the scope of the remedy exceeded SERB's authority under R.C. 4117.12(B) (3). Given this court's conclusion that SERB's findings regarding the unfair labor practice charges were not supported by substantial evidence, any error in the scope of the remedy ordered by SERB cannot be prejudicial to the department. For this reason, the department's argument F is not well-taken.

Based on the foregoing, the department's second and eighth assignments of error are overruled. The third and ninth assignments of error are sustained to the extent that the December 1988 order of SERB regarding the R.C. 4117.11(A) violations are not supported by substantial evidence on the record as a whole. Otherwise, the third and ninth assignments of error are overruled.

Under its first assignment of error, the department contends by way of argument G that the common pleas court exceeded its jurisdiction when it directed SERB to take additional evidence regarding events subsequent to the December 1988 order. It is the department's position that the common pleas court had no authority to remand this matter to SERB for the purpose of taking additional evidence regarding events which occurred subsequent to the issuance of SERB's final order.

Contrary to the contentions of the department, there is statutory authority for a common pleas court to remand a pending matter to SERB to take additional evidence. More particularly, R.C. 4117.13(B) provides:

"The findings of the board as to the facts, if supported by substantial evidence, on the record as a whole, are conclusive. If either party applies to the court for leave to adduce additional evidence and shows to the satisfaction of the court that the additional evidence is material and that there exist reasonable grounds for the failure to adduce the evidence in the hearing before the board, its member or agent, the court may order the board, its member, or agent to take the additional evidence, and make it a part of the transcript. The board may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file the modified or new findings, which, if supported by the evidence, are conclusive and shall file its recommendations, if any, for the modifying or setting aside of its original order."

We note, parenthetically, that the February 24, 1989 order entered by the common pleas court remanding the matter to SERB to take additional evidence states that the order was initiated on SERB's motion. However, there is nothing in the record to suggest that such motion was made. There is some indication in the order that perhaps the motion was made orally at a hearing before the common pleas court, but the department has failed to provide this court with a transcript of that hearing. Accordingly, this court must assume the order was entered on SERB's application.

This court also notes that the remand was entered in the context of SERB's R.C. 4117.13(A) petition for enforcement of its December 1988 order, which petition was filed January 24, 1989. Clearly, within the context of such enforcement proceedings, the common pleas court is authorized by R.C. 4117.13(B) to remand to SERB a pending proceeding for the purpose of taking additional evidence.

Despite the presence of such statutory authority, R.C. 4117.13(B) does impose limits on the power of a common pleas court to order the taking of additional evidence. The additional evidence must be material and there must "***

exist reasonable grounds for the failure to adduce the evidence in the hearing before the board, its member or agent *** ." The department indicates, somewhat obliquely, that the additional evidence was immaterial, since that evidence did not concern the revocation of the three auxiliary commissions constituting the December 1988 unfair labor practice finding. Rather, the department suggests that because the additional evidence concerned the sheriff's January 1989 decision to revoke the auxiliary commissions of all Deputy 1As, this evidence was irrelevant to the enforcement of the December 1988 order.

R.C. 4117.13(B) is quite similar to Section 10(e) of the National Labor Relations Act. Section 160(e), Title 29, U.S. Code. In construing Section 10(e), the United States Supreme Court has held that an application for leave to adduce additional evidence is addressed to the sound discretion of the court. *Southport Petroleum Co. v. N.L.R.B.* (1942), 315 U.S. 100, 104. That discretion, however, may not be exercised in a manner which permits the agency to consider irrelevant evidence. *N.L.R.B. v. Mexia Textile Mills, Inc.* (1950), 339 U.S. 563, 569-570. To employ its power to order a remand which directs the agency to consider irrelevant evidence would impermissibly expand the scope of a court's power to review the agency action. Cf. *N.L.R.B. v. Donnelly Garment Co.* (1947), 330 U.S. 219, 234-235.

Here, the common pleas court remanded the cause to SERB for the purpose of taking additional evidence regarding the department's January 18, 1989 decision not to renew the commissions of all Deputy 1As. SERB was directed to report its findings to the common pleas court within thirty days. Upon remand, SERB conducted a hearing and issued new findings based upon the additional evidence. SERB concluded that the department had violated the December 22, 1989 order by its January 18, 1989 decision not to renew the auxiliary commissions of all Deputy 1As.

We conclude that the common pleas court abused its discretion in remanding this matter to SERB for consideration of the department's January 1989 conduct. The remand impermissibly expanded the scope of the trial court's power to review the December 1988 order. More particularly, the department's post-order conduct was considered, not for the purpose of evaluating the propriety of the initial order, but only to determine whether the department was violating that order. In short, the effect of the March 1989 SERB order was to expand the scope of the

December 1988 order. R.C. 4117.13(B) does not authorize a common pleas court, through SERB, to include post-order conduct as an additional basis for an initial unfair labor practice order.

This is not to say that SERB may not consider, under R.C. 4117.13(B), conduct which occurs subsequent to an unfair labor practice order. Clearly, to the extent such conduct is material to the initial determination, R.C. 4117.13(B) contemplates consideration of such evidence. For example, if post-order conduct suggests that SERB erroneously credited certain testimony in making its initial determination, remand may be appropriate to enable SERB to re-evaluate the initial order. However, R.C. 4117.13(B) cannot be utilized to include conduct occurring subsequent to an initial unfair labor practice order as an additional unfair labor practice. To this extent alone, the first assignment of error is sustained.

The fourth, fifth and sixth assignments of error are sustained. The first, third and ninth assignments of error are sustained in part and overruled in part. The remaining assignments of error are overruled. The judgment of the common pleas court is reversed, and this cause is remanded to the common pleas court with instructions to set aside SERB's December 1988 and March 1989 orders.

*Judgment reversed and
cause remanded
with instructions.*

WHITESIDE, J., concurs.
BRYANT, J., concurs in part and dissents in part.

MARTIN, J., of the Fairfield County Common Pleas Court, sitting by assignment in the Tenth Appellate District.

BRYANT, J., concurring in part and dissenting in part.

Being unable to agree with the majority's disposition of appellant's argument D, I respectfully dissent from that portion of the majority opinion.

Under R.C. 4117.11(A) (3), SERB normally requires the charging party establish the following in order to present a prima facie case which the public employer must then rebut:

(1) the public employee exercised or tried to exercise protected rights;

(2) the public employer actually or implicitly knew of the employee's pursuit of protected rights;

(3) the public employer engaged in or allowed adverse action against the employee;

(4) the action was motivated, at least in part, by hostility to either union or protected activity. See *In re Adena Local School Dist. Bd. of Edn.* (Dec. 29, 1989), SERB 89-034, 1989 SERB 3-328, and *In re Warren County Sheriff* (Sept. 28, 1988), SERB 88-014, 1988 SERB 3-71.

Upon review of the record concerning the December 1988 order issued by SERB, I would find that the trial court did abuse its discretion in finding the order to be supported by substantial evidence on the record as a whole. According to the parties' stipulations, the three employees whose commissions were revoked were exercising their rights under the collective bargaining agreement to seek arbitration of their grievances. Pursuant to the terms of the agreement, the department was aware of this activity and had selected arbitrators in two of the cases. While these requests were pending, the sheriff notified each employee that their auxiliary commissions had been revoked. Accordingly, no dispute exists as to the first three factors required to make out a prima facie case of discrimination under R.C. 4117.11(A)(3).

With respect to the motivating force behind the revocations, the evidence supports the trial court's determination that SERB correctly found an unfair labor practice. While the timing of the revocations is not so immediate as to warrant an inference of discriminatory intent, cf. *Akron Bd. of Edn. v.* State Emp. Relations Bd. (1987), 38 Ohio App. 3d 95, 96-97, the record contains evidence that none of the employees were given any warning of deficiencies in their performance as auxiliaries, that none of the deputies were given a reason for the revocation, that the sheriff told one deputy that "no arbitrator was going to tell him what to do," and that the sheriff provided different reasons on various occasions for revoking the commission of one employee.

Although the majority dismisses, as unsupportive of anti-union animus, the sheriff's statement that "no arbitrator was going to tell him what to do," I disagree. Even if, taken in context, the statement may be subject to the interpretation the majority opinion gives it, it also is subject to a valid interpretation supporting SERB's determination. Given the differences in possible interpretation, deference should be afforded to that meaning SERB has ascribed to the statement.

By this dissent, however, I do not suggest that the evidence herein is overwhelmingly supportive of SERB's decision. To the contrary, the evidence is barely sufficient to the standard on review. Nonetheless, the evidence is such that I cannot say the trial court was clearly wrong in affirming SERB's decision.

The record containing substantial evidence to support the finding by SERB that the department committed unfair labor practices under R.C. 4117.11(A)(1) and (3), I would find that the trial court did not abuse its discretion in affirming this aspect of SERB's order. Accordingly, I would overrule the department's argument D.

---

[1] In fact, this court has previously questioned the statutory basis for the appointment of auxiliary deputies by the sheriff. See *State v.* McDaniel (1975), 44 Ohio App. 2d 163, 173-174. This court expresses no opinion, however, in this case as to the legal status of auxiliary commissions.