CITY OF HUGO, Oklahoma, a Municipal Corporation, Appellee,

v.

The STATE of Oklahoma ex rel. The PUBLIC EMPLOYEES RELATIONS BOARD, and Local 3199, International Association of Firefighters, AFL–CIO/CLC, Appellants.

No. 80363.

Supreme Court of Oklahoma.

Dec. 6, 1994.

Bob Rabon, Hugo, for appellee.

Susan B. Loving, Atty. Gen., Rebecca Rhodes, Asst. Atty. Gen., Oklahoma City, for appellant, Public Employees Relations Bd.

James R. Moore, Louis J. Barlow, Oklahoma City, for appellant, Local 3199, Intern. Ass'n of Firefighters, AFL–CIO/CLC.

KAUGER, Justice:

Two issues are presented: 1) whether the cease and desist order promulgated by the appellant, Public Employees Relations Board (PERB), is supported by substantial evidence; and 2) whether a cease and desist order issued pursuant to 11 O.S. 1991 § 51–104b(C)[1] may require affirmative relief in the form of reinstatement with back

1. Title 11 O.S.1991 § 51–104b(C) provides:

"If upon the preponderance of the testimony taken the Board shall be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to

cease and desist from such unfair labor practice. Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order. If upon the preponderance of the testimony taken the Board shall not be of the opinion, that the person served in the complaint has engaged in or is engaging in any

pay and benefits. We find that: 1) a review of the entire record reveals that the finding of an unfair labor practice is supported by substantial evidence; and 2) the authority of the PERB to issue a cease and desist order pursuant to 11 O.S.1991 § 51–104b(C) does not extend to requiring affirmative relief in the form of reinstatement with back pay and benefits.[2]

## FACTS

On August 2, 1989, Jerry Tucker (Tucker/firefighter), a nine-year veteran of the Hugo Fire Department and a union organizer, was fired after a termination hearing held before the appellee, City of Hugo (Hugo). The City terminated Tucker for insubordination resulting from his refusal to teach a fire safety class. Prior to his discharge, Tucker had never received job-related discipline. Rather, he had been offered a promotion to Captain. Additionally, he had been named "lead off" man—a position of authority in the Captain's absence.

In September of 1988, Fire Chief Tom Pence (Fire Chief) asked seven Hugo firefighters to become instructors in Level I Fire Safety Instruction Courses offered by OSU Tech. Tucker completed the course. However, one officer refused. **Because the certification was a voluntary activity—the courses were not an agency requirement or a part of the job description for Hugo firefighters,** the officer was not disciplined. The certification training occurred off-duty, and the firefighters did not receive additional compensation for completion of the course. Certification required that a firefighter actually teach a fire safety class. Preparation for the class took a good deal of time, both on- and off-duty.

Union activities began in December of 1988. Tucker was active in organizing the Union. On January 4, 1989, the Hugo firefighters voted to form Local 3199, International Association of Firefighters, AFL–CIO/ CLC (Union/appellant); and Tucker was elected its first president. Prior to union organization, the Fire Chief and other municipal leaders made statements indicating that union formation would put firefighters' jobs in jeopardy. The transcript from the PERB hearing contains testimony that: unionization would result in union members losing jobs; Tucker would be terminated as a result of the dissolution of the ambulance service; the City would go to a volunteer system, and all union firefighters would be out of work; union "trouble makers" could get ready to look for other jobs; and there would be repercussions for Tucker and other union members from the City Council and the Mayor.

The day after Tucker was elected as President of the Union, the Fire Chief eliminated a number of his duties—rural fire collections, hazardous material inspections, residential inspections, and department inventory. On March 6, Tucker finished teaching his first fire safety class. The same day, the Fire Chief demoted him from the "lead-off" position. After a dispute involving Sunday work assignments,[3] the Fire Chief told Tucker on July 17 that he would be required to teach ten fire safety courses at two different locations in Hugo in a ten-month period. He would be relieved from that duty for two months and then start the process again.

Before a fire department may offer a fire safety class, it must notify OSU Tech. The notice is called a Form 9, and it can be signed by any certified instructor and the local Fire Chief. It is not necessary that the instructor actually teaching the course sign the Form 9. On July 22, the Assistant Fire Chief (Assistant) demanded that Tucker sign the Form 9 for a class to commence in August. Tucker informed the Assistant that he

2. Still pending in the district court is a third party petition for relief under 42 U.S.C.1984 §§ 1981 and 1983 filed by the firefighter. The third-party petition has been bifurcated from the appeal.

3. After the Union was certified as the firefighters' bargaining agent, the Fire Chief made a number

such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the complaint."

of unilateral changes in department policies and procedures. The changes included: elimination of exchange time between firefighters; supervisors were told to write up firefighters for anything found lacking in their performance, no matter how insignificant; firefighters were prohibited from talking about the Union while on duty; restrictions on taking compensatory time were instituted; and there was an alteration in normal policies for Sunday work.

was waiting for a response from the Mayor on a meeting he had with him concerning the number of fire safety classes he would be required to conduct. On July 25, the Fire Chief called Tucker into his office for a "corrective interview." At this meeting, Tucker informed the Fire Chief that he had not heard from the Mayor. Tucker was informed that he had until July 31st to either sign and mail the Form 9, or he would be severely disciplined. A compliance review was set for August 3rd. Although Tucker initially agreed to sign the Form 9, he recanted. Rather than waiting until July 31st to take additional action against Tucker, the Fire Chief suspended Tucker for insubordination. Tucker was notified the next day that he would be terminated and that a pre-termination hearing was scheduled before the City Council on August 1st.[4]

Tucker signed the Form 9 and returned it to the Fire Chief on July 29th—two days before the date initially set for compliance. However, the Fire Chief refused to sign the form making it impossible for it to be submitted to OSU Tech and for the course to commence on the scheduled August date. Although the City Council was advised of Tucker's compliance at the hearing on August 1st, the Council upheld his termination.

On August 4, 1989, the Union filed an unfair labor practice charge with the PERB. It asserted that Tucker was fired in retaliation for his union activities. The PERB

agreed finding that Hugo had committed unfair labor practices pursuant to 11 O.S.1991 §§ 51–102(6), (6a)(1),[5] 51–102(6), (6a)(3),[6] and 51–102(6), (6a)(4).[7] The PERB issued a cease and desist order requiring Tucker's reinstatement with back pay and benefits. Hugo appealed the order to the district court. Finding that the order was unsupported by competent evidence and that the PERB lacked jurisdiction to consider the charge, the trial judge reversed. On appeal, the Court of Appeals affirmed in part and reversed in part. It found sufficient evidence to support the finding of an unfair labor practice. However, it held that the PERB lacked authority to order the firefighter's reinstatement with back pay. We granted certiorari on March 4, 1994, to consider the first impression question of whether a cease and desist order issued pursuant to 11 O.S.1991 § 51–104b(C)[8] affords affirmative relief by reinstatement with back pay and benefits,[9] and whether the finding of an unfair labor practice is supported by substantial evidence.

## I.

### A REVIEW OF THE ENTIRE RECORD REVEALS THAT THE FINDING OF AN UNFAIR LABOR PRACTICE IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Hugo insists that no unfair labor practice was committed. The PERB found

4. The Court of Appeals determined that the notice provided for the hearing was inadequate under the Oklahoma Open Meeting Act, 25 O.S. 1991 § 301 et seq. This issue is not presented for review on certiorari.

5. Title 51 O.S.1991 § 51–102(6), (6a)(1) provides:

" 'Unfair labor practices' for the purpose of this article shall be deemed to include but not be limited to the following acts and conduct: (1) interfering with, restraining, intimidating or coercing employees in the exercise of the rights guaranteed them by this article ..."

6. Title 11 O.S.1991 § 51–102(6), (6a)(3) provides:

" 'Unfair labor practices' for the purpose of this article shall be deemed to include but not be limited to the following acts and conduct: (3) interfering in any manner whatsoever with the process of selection by firefighters or police officers of their respective bargaining agents or

attempting to influence, coerce or intimidate individuals in such selection ..."

7. Title 11 O.S.1991 § 51–102(6), (6a)(4) provides:

" 'Unfair labor practices' for the purpose of this article shall be deemed to include but not be limited to the following acts and conduct: (4) discharging or otherwise disciplining or discriminating against a police officer or firefighter because he has signed or filed any affidavit, petition or complaint or has given any information or testimony under this article or because of his election to be represented by the bargaining agent ..."

8. Title 11 O.S.1991 § 51–104b(C), see note 1, supra.

9. In *Tulsa v. Public Emp. Relations Bd.,* 845 P.2d 872, 874 (Okla.1990), we noted that the district court found that the PERB was without authority to mandate back pay in a cease and desist order.

that the Union established by a preponderance of the evidence that Hugo engaged in unfair labor practices. Appellate courts review the entire record made before an administrative agency acting in its adjudicatory capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence.[10] Adjudicatory orders will be affirmed if the record contains substantial evidence in support of the facts upon which the decision is based, and if the order is otherwise free of error.[11]

■ Substantial evidence is more than a scintilla of evidence. It possesses something of substance and of relevant consequence that induces conviction and may lead reasonable people to fairly differ on whether it establishes a case.[12] In determining whether an administrative agency's findings and conclusions are supported by substantial evidence, the reviewing court will consider all the evidence including that which fairly detracts from its weight.[13] However, great weight is accorded the expertise of an administrative agency. On review, a presumption of validity attaches to the exercise of expertise. An appellate court may not substitute its judgment for that of an agency, particu-

larly in the area of expertise which the agency supervises.[14]

■ The standard for establishing an unlawful discharge of an officer under the Fire and Police Arbitration Act (Act), 11 O.S.1991 § 51–101 et seq. was set forth in *Hall v. O'Keefe*, 617 P.2d 196, 201 (Okla. 1980). Pursuant to our pronouncement in *Hall*, in order to establish a claim that the discharge of an officer by a corporate authority constitutes an unfair labor practice, the officer must show that involvement in the activities protected by the Act was a substantial motivating factor in the decision to terminate employment. A mere showing that the protected activities would be adversely affected by the discharge is not sufficient to meet this burden. An officer may not, by engaging in union activities, create a shield from removal which would occur in the absence of such activities. Involvement in protected union conduct does not obligate the employer to prove more substantial grounds for removal than would be required otherwise.

In *Hall*, two Broken Bow police officers were discharged "for the good of the service" one day before labor negotiations were set to begin. The district court found that the

However, the cause was decided on other grounds.

10. *Dugger v. State ex rel. Oklahoma Tax Comm'n*, 834 P.2d 964, 968 (Okla.1992). Title 75 O.S. 1991 § 322 sets forth those situations in which this Court or the district court may set aside or modify the order of an administrative agency. It provides in pertinent part:
"(1) In any proceeding for the review of an agency order, the Supreme Court or the district court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without

otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested...."

11. *Dugger v. State* ex rel. *Oklahoma Tax Comm'n*, see note 10, supra; *Tulsa Area Hosp. Council, Inc. v. Oral Roberts Univ.*, 626 P.2d 316, 320 (Okla.1981).

12. *State ex rel. Henry v. Southwestern Bell Tel. Co.*, 825 P.2d 1305, 1316 (Okla.1991); *Turpen v. Oklahoma Corp. Comm'n*, 769 P.2d 1309, 1317 (Okla.1988).

13. *State ex rel. Cartwright v. Oklahoma Corp. Comm'n*, 640 P.2d 1341, 1347 (Okla.1982); *El Paso Natural Gas Co. v. Corporation Comm'n*, 640 P.2d 1336, 1338 (Okla.1981).

14. *Denney v. Scott*, 848 P.2d 1142, 1143 (Okla. 1992); *Abstracts of Oklahoma, Inc. v. Payne County Title Co.*, 825 P.2d 1334, 1339 (Okla. 1992); *R & R Eng'g Co. v. Oklahoma Employment Sec. Comm'n*, 737 P.2d 118, 119 (Okla.

discharges constituted unfair labor practices within the meaning of the Act. The district court's finding was premised solely upon the timing of the discharges. We reversed, based on the lack of evidence to support the district court's ruling. Unlike the situation here, no evidence was presented in *Hall* concerning what weight, if any, was given to the labor activities of the Broken Bow officers in reaching the decision to terminate their employment. Here, there was abundant evidence presented concerning union animus— including evidence that Tucker's job would be put in jeopardy by union organization.[15] Although Hugo's brief indicates that Tucker admitted his insubordination before the City Council, an examination of the transcript indicates that the refusal to teach the fire safety class was premised on the fact that no additional pay was involved.[16] The Assistant Chief testified in the PERB hearing that certification as an instructor was voluntary and that the training was not a part of the firefighter's job description. Additionally, he stated that if Tucker had resigned as an instructor, there would have been no basis for discipline. **In essence, the evidence in-** dicates that Tucker was discharged for failing to comply with an order to complete an assignment for which he was not required to acquire training, which was not a part of his job description, and from which he could have resigned without penalty. We find that a review of the entire record, including that evidence which might fairly detract from the PERB'S findings,[17] reveals that the finding of an unfair labor practice is supported by substantial evidence.

## II.

## THE AUTHORITY OF THE PUBLIC EMPLOYEES RELATIONS BOARD TO ISSUE A CEASE AND DESIST ORDER PURSUANT TO 11 O.S.1991 § 51–104b(C) DOES NOT EXTEND TO REQUIRING AFFIRMATIVE RELIEF IN THE FORM OF REINSTATEMENT WITH BACK PAY AND BENEFITS.

The PERB and the Union argue that the authority to issue a cease and desist order

1987); *Tulsa Area Hosp. Council, Inc. v. Oral Roberts Univ.*, see note 11, supra.

**15.** See discussion pp. 3–4, supra. See also, *State ex rel. Missey v. Cabool*, 441 S.W.2d 35 (Mo.1969) in which the Missouri court found an unfair labor practice where the only ascertainable motive and purpose of the city in discharging and reducing the pay of the employees was to discriminate against and intimidate them for joining and having the union represent them in dealing with the city; and Annot., "What Constitutes Unfair Labor Practice Under State Public Employee Relations Acts," 9 A.L.R. 4th 21 (1981).

**16.** Transcript, p. 347, provides in pertinent part:

"... Q No, what was said by Mr. Tucker? A Uh, we he more or less just told us why, you know, he thought he got dismissed, whatever, and then some of the Council asked questions, and I believe Mr. Bradshaw asked him if he refused to teach these classes, and he said, yes. And I believe Mr. Bradshaw asked him if he would go ahead and teach the classes now, and I think Mr. Tucker's response was, I would if they paid me more money...."
Transcript p. 381, provides in pertinent part:
"... Q As I understood your testimony earlier, you said that Mr. Tucker said at the Council meeting he wouldn't teach the class.
A Yeah.

Q And was this advanced by Mr. Tucker and his representatives at the meeting?
A No, it wasn't that I remember.
Q Well, was it said at the meeting by Mr. Tucker? I understood you to say that earlier.
A About him not being....he'd rather not teach a class, he could live with hisself better?
Q Yes.
A Yeah, that's what he sat there and said.
Q At the Council Meeting?
A Yeah, at the hearing.
Q And then you asked him, well, if you paid him some money, would he teach the class, and he said, yes, he would?
A If he'd been paid, would he take the...."
Transcript, p. 392, provides in pertinent part:
"... Q Did he say anything about teaching or not teaching?
A Yes, sir.
Q What did he say?
A He said that he didn't feel like he ought to teach that class and he said that he wouldn't teach the class.
Q That he wouldn't teach the class?
A Yes, sir.
Q Was any discussion had about what it would take for him to teach the class?
A Uh, I believe Mr. Bradshaw asked him, if he was paid for it, would he teach the class? He said, I probably would...."

**17.** *State ex rel. Cartwright v. Oklahoma Corp. Comm'n*, see note 13, supra; *El Paso Natural*

pursuant to 11 O.S.1991 § 51–104b(C) [18] necessarily encompasses the ability to order reinstatement with back pay and benefits when the unfair labor practice committed is a wrongful discharge. Hugo points out that § 51–104b(C) contains no express authority for the ordering of affirmative relief and it insists that, given the legislative history of this statute,[19] an interpretation allowing such an order would impermissibly expand the PERB's authority. We agree.

The PERB and the Union insist that the authority to order reinstatement must necessarily be implied from its authority to issue cease and desist orders pursuant to § 51–104b(C). The argument is premised upon two theories: 1) that the only effective relief for an unlawful labor practice involving discharge is reinstatement; and 2) that the ability to require affirmative relief is necessary to uphold the public policy expressed in the Fire and Police Arbitration Act (Act), 11 O.S.1991 § 51–101 et seq. (Act). Hugo insists that the right to issue a cease and desist order requiring reinstatement and back pay may not be inferred from the language of § 51–104b(C) and that it was not the intent of the Legislature to extend this power to the PERB.

■■■■■ We recognize that an officer or an agency may have implied powers not granted by statute. The authority will be implied if necessary for the due and efficient

exercise of powers expressly granted or if it may be fairly implied from the statutory language.[20] However, an agency created by statute may exercise only those powers granted and may not expand those powers by its own authority.[21] In determining what authority may be implied from a statutory scheme, the statute as a whole is considered; and the legislative intent must be determined.[22] The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. Legislative intent controls judicial statutory construction.[23]

■■■■ It is undisputed that nothing in the language of 11 O.S.1991 § 51–104b(C) [24] affords the PERB the express authority to enter a cease and desist order requiring affirmative relief. The public policy of the Act is expressed in § 51–101(B) and (C).[25] Subsection (B) accords firefighters and police officers all rights of labor, with the exclusion of the right to strike. Subsection (C) states specifically that it is the public policy of this State that no firefighter or police officer shall be discharged for union activities. Undoubtedly, the ability to order reinstatement with back pay and benefits would help accomplish the goal of ensuring that employees not be terminated for participating in union organizations. If we were considering the language of the Act in a vacuum, we might be persuaded that the expressed public policy

Gas Co. v. Corporation Comm'n, see note 13, supra.

18. Title 11 O.S.1991 § 51–104b(C), see note 1, supra.

19. See note 32, infra.

20. Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n, 764 P.2d 172, 182 (Okla.1988); Marley v. Cannon, 618 P.2d 401, 405 (Okla.1980); Oklahoma Tax Comm'n v. Fortinberry Co., 201 Okla. 537, 207 P.2d 301, 302–03 (Okla.1949).

21. Henderson v. Maley, 806 P.2d 626, 633 (Okla. 1991); Marley v. Cannon, see note 20, supra; Adams v. Professional Practices Comm'n, 524 P.2d 932, 934 (Okla.1974).

22. Board of Examiners v. Tubbs, 307 P.2d 830, 831–32 (Okla.1957).

23. Fuller v. Odom, 741 P.2d 449, 452 (Okla. 1987); Matter of Phillips Petroleum Co., 652 P.2d

283, 285 (Okla.1982); Becknell v. State Indus. Court, 512 P.2d 1180, 1183 (Okla.1973).

24. Title 11 O.S.1991 § 51–104b(C), see note 1, supra.

25. Title 11 O.S.1991 § 51–101(B) and (C) provide in pertinent part:
"B. It is declared to be the public policy of this state to accord to the permanent members of any paid fire department or police department in any municipality all of the rights of labor, other than the right to strike or to engage in any work stoppage or slowdown.... C. It is declared to be the public policy of the State of Oklahoma that no person shall be discharged from or denied employment as a member of any paid fire department or police department in any municipality of this state by reason of membership or nonmembership in, or the payment or nonpayment of any dues, fees or other charges to, an organization of such members for collective bargaining purposes as herein contemplated."

affords the PERB the implied power to issue a cease and desist order requiring reinstatement for a discharge resulting from union membership. However, the Legislature's acts in relation to § 51–104b(C) do not support such a finding.[26]

▮ In determining legislative intent under the Oklahoma Act, we must consider parallel provisions of the National Labor Relations Act (National Act), 29 U.S.C. § 151 (1984) et seq.[27] In *Stone v. Johnson,* 690 P.2d 459, 462 (Okla.1984), we considered a provision of the National Act which imposed a mutual obligation upon the employer and the representative of the employees to bargain in good faith. The statutory language of the National Act and the Oklahoma Act considered in *Stone* imposed identical obligations upon the parties participating in the bargaining process. The language of 11 O.S. 1991 § 51–104b(C) is found in the National Act at 29 U.S.C. § 160(c) (1984). Section 51–104b(C) simply provides for the issuance of an order requiring the offending party to cease and desist from the unfair labor practice. The Federal provision goes further. Section 160(c) provides in pertinent part:

" ... If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action *including reinstatement of employees with or without back pay,* as will effectuate the policies of this subchapter: Provided, That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him ..." (Emphasis supplied.)

26. Doubt as to the meaning of a statute may be resolved by reference to its history. *Berry v. State ex rel. Oklahoma Pub. Employees Retirement Sys.,* 768 P.2d 898, 899 (Okla.1989); *Lekan v. P & L Fire Protection Co.,* 609 P.2d 1289, 1292 (Okla.1980).

27. *Stone v. Johnson,* 690 P.2d 459, 462 (Okla. 1984). In *Stone,* we also considered prior labor decisions involving a statutory provision imposing an identical obligation upon both state and national parties participating in collective bargaining in reaching our decision. Research has revealed a number of cases on the state level concerning the authority of various regulatory agencies to issue cease and desist orders. Those cases generally allow the regulatory agency to order reinstatement with back pay and benefits. However, those the decisions are based on statutory language either identical to the federal act or which contains broader discretion than that found in 11 O.S.1991 § 51–104b(C), see note 1, supra. See, *Unified School Dist. No. 279 v. Secretary,* 247 Kan. 519, 802 P.2d 516, 524–25 (1990) (The Kansas statute, like the Oklahoma statute, does not specifically provide for relief in the form of reinstatement with back pay and benefits. Despite its difference from the National Act, the Kansas court found that an award of back pay was appropriate. The Kansas statute contains broader language than does § 51–104b(C). It provides for "a final order granting or denying in whole or in part the relief sought" if an unfair labor practice is found to exist. See, K.S.A.1989 Supp. 72–5430a(b) providing in pertinent part: "(a) Any controversy concerning prohibited practices may be submitted to the secretary.... (b) The secretary shall either dismiss the complaint or determine that a prohibited practice has been or is being committed, and shall enter a final order granting or denying in whole or in part the relief sought."); *School Comm. v. Labor Relations Comm'n,* 388 Mass. 557, 447 N.E.2d 1201, 1213 (1983) (Commission authorized to take affirmative action to comply with provisions of public employment law.); *City of Bangor v. American Fed'n,* 449 A.2d 1129, 1136 (Me.1982) (Statutory language specifically providing for remedy of reinstatement with back pay.); *Lally v. Copygraphics,* 85 N.J. 668, 428 A.2d 1317, 1319 (1981) (Statute specifically enumerated power to restore employee with compensation for lost wages.); *Rockwell v. Board of Educ.,* 393 Mich. 616, 227 N.W.2d 736, 746–747 (1976) (Statutory language mirroring National Labor Relations Act.); *Wisconsin Tel. Co. v. Department of Indus.,* 68 Wis.2d 345, 228 N.W.2d 649, 662 (1975) (Statute allowed award of back pay. Wisconsin court noted that prior statute had not allowed order for back wages.); *OSEA v. Lake County School Dist.,* 93 Or.App. 481, 763 P.2d 160, 163 (1988) (Statute contained specific authority for "affirmative action ... as necessary to effectuate" purposes of Act.); *Matter of Village of Wayland,* 61 A.D.2d 674, 403 N.Y.S.2d 790, 791 (1978) (Statute contained specific authority for affirmative action to effectuate the policies of the Civil Service Law.). See also, discussion, pp. 15–18, infra. Because such discretion is not found within the language of the Oklahoma Act, these decisions are not persuasive.

The Federal Act expressly provides the authority to issue cease and desist orders containing affirmative relief in the form of reinstatement with back pay. The Oklahoma Act does not. In enacting § 51–104b(C), the Legislature borrowed extensively from 29 U.S.C. § 160(c) (1984). The Legislature chose to exclude the emphasized language in its passage of § 51–104b(C). When the Legislature models an act on another statute and adopts only a portion of the existing statute, it is presumed that the Legislature intended to omit that portion of the statute which it failed to adopt.[28]

The inclusion of one thing in a statute implies the exclusion of another.[29] **Because the Legislature did not provide for reinstatement with back pay in conjunction with the issuance of a cease and desist order, we must presume that it did not intend to give this authority to the PERB. If and when the Legislature desires to create such authority, it can do so.** For example, it has provided specifically under the Workers' Compensation Act, 85 O.S.1991 § 1 et seq., for situations where an employer dismisses an employee for the filing of a workers' compensation claim [30] and pursuant to the Discrimination in Employment Act, 25 O.S.1991 § 1101, et seq., for employees who are terminated for discriminatory purposes.[31] We find that the authority of the PERB to issue a cease and desist order pursuant to 11 O.S.1991 § 51–104b(C) does not extend to granting affirmative relief in the form of reinstatement with back pay and benefits.[32]

Our independent research indicates that Oklahoma is one of the few states in the Union which has not adopted the language of the Federal Act authorizing "make whole" relief. Nor has it included language which goes beyond § 51–104b(C) in permitting the reinstatement of aggrieved employees with

28. *Kirchner v. Chattanooga Choo Choo*, 10 F.3d 737, 738–39 (10th Cir.1993); *Crane Co. v. Richardson Constr. Co.*, 312 F.2d 269–70 (5th Cir. 1963). See also, *Bank of America v. Webster*, 439 F.2d 691, 692 (9th Cir.1971).

29. *Public Serv. Co. v. State ex rel. Corp. Comm'n*, 842 P.2d 750, 753 (Okla.1992); *State ex rel. Macy v. Freeman*, 814 P.2d 147, 152 (Okla.1991).

30. Title 85 O.S.1991 § 6 provides:
"Except as provided in Section 29 of this act, a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive if applicable, suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. Exemplary or punitive damage awards made pursuant to this section shall not exceed One Hundred Thousand Dollars ($100,000.00). The burden of proof shall be upon the employee."

31. Title 25 O.S.1991 § 1505(C) provides in pertinent part:
"Affirmative action ordered under subsection B of this section may include but is not limited to:
1. hiring or reinstatement of employees with or without back pay (less amount earned or earnable with reasonable diligence by such employees) ..."

32. Bills which fall short of passage, much like the testimony of individual lawmakers, are not probative of legislative intent. *Allen v. State ex rel. Bd. of Trustees*, 769 P.2d 1302, 1306 (Okla. 1988). However, even legislative actions not having the force and effect of law may throw some light on legislative thought. *State ex rel. Maryland v. Phillips Petroleum Co.*, 189 Okla. 629, 118 P.2d 621, 627 (Okla.1941). We note that in 1991 H.B. No. 1356 was introduced in the Oklahoma Legislature. H.B. 1356 contained a proposed amendment to 11 O.S.1991 § 51–104b(C), see note 1, supra. The amendment would have provided for the precise remedy the PERB argues for here. The proposed amendment provided:
"C. If upon the preponderance of the testimony taken the Board shall be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its finding of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, AND MAY ORDER THE PERSON TO TAKE SUCH AFFIRMATIVE ACTION, INCLUDING REINSTATEMENT OF EMPLOYEES WITH OR WITHOUT BACK PAY, AS WILL EFFECTUATE THE POLICIES OF THIS SECTION. Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order. If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person served in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the complaint...." (Emphasis in original.)
The proposed amendment died in committee.

back pay and benefits.[33] We recognize that the result of this legislative omission is to leave the PERB only with "cease and desist" authority which will be ineffective to remedy "completed" unfair labor practices. A further result is the substantial undermining of the PERB's ability to perform its statutory mission of preventing unfair labor practices.

Aggrieved employees, and their labor organizations may well conclude that the most significant rights granted by the Federal Act can be vindicated only in the courts—either by an action in tort for wrongful termination or by enforcement of the bargaining agreement. The PERB is the agency created to oversee labor relations in the public sector, but its authority has been curbed by the omission of enabling language. While this regime strikes the Court as irregular at best, it seems compelled by the Legislature's disinclination to enforce the rights it has conferred on municipal police and firefighters. Nevertheless, we are not at liberty to extend 11 O.S.1991 § 51–104b(C) by judicial fiat to resolve this anomaly.

## CONCLUSION

On appeal, it is our task to make the same review of the PERB's action as did the district court in order to determine whether on the whole record, the decision was substantially supported by the evidence and by applicable law.[34] We find that a review of the entire record reveals that the finding of an unfair labor practice is supported by substantial evidence.

The statements found in the Fire and Police Arbitration Act (Act), 11 O.S.1991 § 51–101 et seq., indicate a strong public policy intended to protect employees from discharge because of union activities.[35] However, 11 O.S.1991 § 51–104b(C) [36] does not expressly grant the PERB the power to order reinstatement with back pay and benefits. Had the Legislature intended to provide the PERB with this authority, it could have done so in clear language.[37] Instead, it omitted language providing just such a remedy which is found in the National Labor Relations Act, 29 U.S.C. § 141 (1984) et seq.[38] It is our duty to give effect to legislative acts, not to amend, repeal or circumvent them.[39] The construction afforded § 51–104b(C) may render a cease and desist order ineffective against an already-completed unfair labor practice in the form of a discharge. Nevertheless, this Court does not sit as a council of revision, empowered to rewrite legislation in accord with its own conception of prudent public policy.[40] We may not give the PERB authority the Legislature chose to withhold. The authority of the PERB to issue a cease and desist order pursuant to 11 O.S.1991 § 51–104b(C) does not extend to affirmative relief in the form of reinstatement with back pay and benefits.

**OPINION OF COURT OF APPEALS VACATED; DISTRICT COURT REVERSED; PUBLIC EMPLOYEES RE-**

---

**33.** See the discussion and cases cited in footnote 27, supra.

**34.** *Dugger v. State ex rel. Oklahoma Tax Comm'n,* see note 10, supra.

**35.** Title 11 O.S.1991 § 51–101(B) and (C), see note 25, supra.

**36.** Title 11 O.S.1991 § 51–104b(C), see note 1, supra.

**37.** See, 85 O.S.1991 § 6, note 30, supra, and 25 O.S.1991 § 1505(C), note 31, supra.

**38.** Title 29 U.S.C. 1984 § 160(c) provides in pertinent part:
"... If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: Provided, That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him ..." (Emphasis provided.)

**39.** *Toxic Waste Impact Group, Inc. v. Leavitt,* 755 P.2d 626, 630 (Okla.1988); *Allgood v. Allgood,* 626 P.2d 1323, 1337 (Okla.1981).

**40.** *Toxic Waste Impact Group, Inc. v. Leavitt,* see note 39, supra.

LATIONS BOARD AFFIRMED IN PART, REVERSED IN PART.

LAVENDER, V.C.J., HARGRAVE, OPALA, ALMA WILSON, SUMMERS and WATT, JJ., concur.

SIMMS, J., concurs in the judgment.

HODGES, C.J., dissents.