1999 OK CIV APP 118

Robert MEYER, Appellant,

v.

The STATE of Oklahoma ex rel. Oklahoma State BUREAU OF INVESTIGATION, Appellee.

No. 91,691.

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 28, 1999.

Richard B. O'Connor, Oklahoma City, Oklahoma, for appellant.

Alicia Connolly–Lohr, Assistant Attorney General, Oklahoma City, Oklahoma, for appellee.

## OPINION

TAYLOR, J.

¶1 Appellant, Robert Meyer, seeks review of the trial court's order affirming a decision by the Oklahoma State Bureau of Investigation (OSBI) to revoke Meyer's license to carry a concealed weapon pursuant to the Oklahoma Self–Defense Act, 21 O.S.Supp.1998 §§ 1290.1 through 1290.26 (OSDA), based on Meyer's alleged mental instability. Based on our review of the record, the parties' briefs, and the applicable law, we affirm.

¶2 The record reflects that Meyer in 1996 obtained a concealed handgun license under the OSDA. In May 1997, following an incident involving the Oklahoma City police, he was involuntarily committed by the dis-

trict court to an Oklahoma City hospital for treatment of a mental condition. He was released approximately two weeks later. In June 1997, the OSBI suspended Meyer's OSDA license. An OSBI hearing examiner heard Meyer's challenge to the suspension in July 1997, and entered an order revoking Meyer's license.

¶3 Meyer appealed to the district court, which affirmed the hearing examiner. The district court determined that the OSBI had proved by a preponderance of the evidence—but not by clear and convincing evidence—that Meyer's license should be revoked. The district court further found that the OSBI was only required to prove revocation was justified by a "preponderance" rather than by "clear and convincing" evidence, however, and that the agency had sustained its burden.[1] Both the OSBI and the district court relied on 21 O.S.Supp.1998 § 1290.10(6), which requires denial or revocation of an OSDA license to an applicant shown to have the following "prohibited condition":

> An attempted suicide or other condition relating to or indicating mental instability or an unsound mind which occurred within the preceding ten-year period from the date of the application for a license to carry a concealed firearm....

¶4 Meyer appeals. He contends the OSBI disregarded and failed to weigh certain medical evidence which he presented to demonstrate his mental stability, and that the trial court also ignored this evidence and allegation of error. In addition, Meyer contends the statute on which the lower tribunals relied in revoking his license does not apply to the facts of this case.

¶5 The OSDA authorizes the OSBI to issue concealed carry licenses provided that certain conditions are met and certain "pre-

---

1. Neither party contests the trial court's decision that the "preponderance" standard applies. We agree with the district court on this issue as well. The clear and convincing standard has been applied to situations where revoking the license in question could seriously hamper an individual's ability to exercise his profession or earn a living—for example, licenses to practice medicine, law, or dentistry. *See Johnson v. Board of Gover-* *nors of Registered Dentists,* 1996 OK 41, 913 P.2d 1339. The preponderance standard, on the other hand, has been applied to revocation hearings for licenses to exercise special privileges that otherwise would be prohibited—such as driving a car. *See Peters v. Oklahoma Dept. of Public Safety,* 1976 OK 183, 557 P.2d 908. Meyer is a former postal worker and does not claim he needs the OSDA license to earn a living.

clusions" do not exist as to eligible applicants. License eligibility requirements are set forth at 21 O.S.Supp.1998 § 1290.9; conditions deemed "mandatory preclusions," requiring denial of a license, are set forth at § 1290.10; and "other preclusions" that may delay issuance of a license are listed in § 1290.11. As previously noted, an individual who has attempted suicide or who has some "other condition relating to or indicating mental instability or an unsound mind ... within the preceding ten-year period" is absolutely precluded from eligibility for a license under § 1290.10(6).

¶ 6   Pursuant to § 1290.17, OSBI is authorized to suspend or revoke concealed carry licenses. Under § 1290.17.A.:

> After a concealed handgun license has been issued, the discovery of or the occurrence of any condition which directly affects a person's eligibility for a handgun license as provided by the provisions of Section 1290.9 or 1290.10 ... *shall require* revocation of the license by [the OSBI]. The discovery of or the occurrence of any condition pursuant to Section 1290.11 ... shall cause a suspension of the handgun license for a period of time as prescribed for the condition. (Emphasis added.)

¶ 7   The evidence before the hearing officer included testimony from Meyer and from two of the Oklahoma City police officers involved in the May 1997 incident. One of the officers had been followed, and then stopped, by Meyer while the officer was on routine patrol in his squad car. Meyer, in his own vehicle, had cut in front of the officer's vehicle to stop him, and then accused the officer of following him. When the officer approached Meyer's car, he observed a large knife in the back pocket of Meyer's driver's seat, and instructed Meyer to stay in the car while the officer called for back-up.

¶ 8   When the back-up officer arrived, Meyer was told to get out of the vehicle. As he did so he told the officers that he was carrying a weapon and reached for his waistband. The officers immediately handcuffed him and placed him in a squad car. Meyer gave permission for a search of his vehicle, during which the officers found a number of additional weapons, including three more loaded handguns, four knives, a taser gun, a pencil blow torch, and 63 rounds of ammunition.[2] Meyer then informed the officers that he had been fired from the U.S. Postal Service, and that he believed the police were working with postal authorities to stalk and watch him. The police ultimately sought an emergency order of detention against Meyer, and following a hearing Meyer was involuntarily committed by the district court to an Oklahoma City hospital. He was discharged approximately two weeks later.

¶ 9   Meyer testified on his own behalf that he had worked for the United States Postal Service for more than 10 years when he was placed on administrative leave. He testified that a fellow worker had falsely reported that Meyer had threatened to shoot people when he returned to work following leave, and that this had triggered a series of psychological tests and examinations. Meyer introduced on his own behalf a report from one clinical psychologist, a letter from another clinical psychologist, and an affidavit from a psychiatrist, all of which indicated Meyer was not a threat to himself or others. Though the evidence was admitted, Meyer did not call any of the individual authors of these documents to testify.

¶ 10   The OSBI called Dr. Perry Taaca, medical director for the postal service's Oklahoma district and a member of its "threat assessment team," who testified concerning the agency's investigation of Meyer's alleged threat. Though Taaca also gave his opinion that Meyer was mentally unstable, the OSBI hearing officer specifically rejected this testimony as unreliable. However, the hearing officer found that, by virtue of the testimony by the two police officers and Meyer's admitted involuntary commitment, the OSBI had sustained its burden of proof demonstrating that Meyer had a condition justifying revocation of his license.

---

**2.**  Meyer testified he had these weapons—all of which were legally in his possession—because he is a gun enthusiast.

¶ 11 On an appeal from an administrative decision, the appellate courts at all levels apply the same standard of review directly to the administrative record, without regard to the lower court's decision. 75 O.S. 1991 § 322; *Seely v. Oklahoma Horse Racing Comm'n*, 1987 OK CIV APP 61, 743 P.2d 685. Pursuant to § 322, the reviewing court may set aside the decision if the court finds substantial rights of the petitioner were prejudiced because the agency's decision is "arbitrary and capricious" or that it is "clearly erroneous in view of the reliable, material, probative and substantial competent evidence." The reviewing court may not, however, re-weigh the evidence or substitute its judgment for that of the agency on a question of fact. The agency's adjudicative order must be affirmed if the record contains substantial evidence to support the facts upon which the order is based, and if the order is otherwise free of error. *City of Hugo v. State of Okla. ex rel. Pub. Employees Relations Bd.*, 1994 OK 134, 886 P.2d 485. As stated by the court there:

> Substantial evidence is more than a scintilla of evidence. It possesses something of substance and of relevant consequence that induces conviction and may lead reasonable people to fairly differ on whether it establishes a case. In determining whether an administrative agency's findings and conclusions are supported by substantial evidence, the reviewing court will consider all the evidence including that which fairly detracts from its weight. However, great weight is accorded the expertise of an administrative agency. On review, a presumption of validity attaches to the exercise of expertise.

1994 OK 134 at ¶ 10, 886 P.2d at 490 (footnotes omitted).

¶ 12 Upon review of the entire record presented, including the evidence presented by Meyer, we concur with the OSBI hearing officer and the trial court that substantial evidence supports the OSBI's decision to revoke Meyer's license. Though Meyer complains the hearing officer did not specifically address Meyer's medical evidence, he refers us to no authority requiring the officer to include such a finding, and we do not find the failure to include one to be arbitrary or capricious, or to detract from the overall legal or factual soundness of the decision. The record includes testimony from police officers whose lay opinions as to their perceptions of Meyer's mental soundness was admissible, with the weight to be accorded that testimony left to the trier of fact—in this case, the hearing officer. *See McGregor v. State*, 1989 OK CR 71, 885 P.2d 1366. We cannot re-weigh the evidence here. We find the record sufficient as a whole to support the lower tribunal's decision.

¶ 13 In his final assertion of error, Meyer contends the hearing officer and district court cannot use § 1290.10(6) to revoke Meyer's license, because, he argues, § 1290.10(6) applies only to conditions which occurred within ten years *prior to* the license application date. Because his condition and conduct occurred *after* the application date, he claims § 1290.10(6) cannot be used for revocation purposes. This argument is without merit. Generally, a license may be revoked for any reason that would have justified refusal to issue it in the first place, and may be revoked for various acts of misconduct occurring after the license has been issued. *Williams v. Dickey*, 204 Okla. 629, 232 P.2d 637 (1951). The statutory language in question here is clear in directing the OSBI to revoke a concealed handgun license upon discovery of any condition that would preclude eligibility for the license in the first place. Just such a situation was presented in the case at bar, and the OSBI acted properly pursuant to its statutory mandate.

¶ 14 As previously discussed, the decision by the lower tribunals is supported by substantial evidence. Accordingly, the trial court's judgment is AFFIRMED.

GOODMAN, P.J., and RAPP, J., concur.