2002 OK CIV APP 54

**DISCOUNT CIGARETTES, INC., d/b/a, Discount Cigarettes Smoke Shop, Appellant,**

v.

**The OKLAHOMA TAX COMMISSION, Appellee.**

No. 95,241.

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 1, 2002.

Certiorari Denied April 9, 2002.

Michael S. "Mickey" Homsey, Oklahoma City, OK, for Appellant.

Thomas E. Kemp, Jr., Jay L. Harrington, Dawn Elizabeth Cash, Oklahoma Tax Commission, Oklahoma City, OK, for Appellee.

## OPINION

ADAMS, Judge:

¶1 The Oklahoma Tax Commission (OTC) received a complaint from five smoke shop operators in the Oklahoma City area alleging that Discount Cigarettes, Inc. (Appellant) was selling cigarettes in violation of the Unfair Cigarette and Tobacco Sales Act, 68 O.S.1991 § 326, *et seq.* (the Act) because prices were set too low at a location in Warr Acres and were set with an intent to injure competition. The shops attached copies of advertisements from the Warr Acres location and from another shop owned by Appellant to support the low pricing allegations.

¶2 OTC conducted an investigation, and an auditor concluded that a violation of the Act had occurred. Following a hearing, an administrative law judge issued a proposed order which found Appellant's advertised prices were below the minimums allowed under the Act. The proposed order was adopted by OTC, and this appeal followed.

¶3 In considering this appeal, we review the whole record, but we do not reweigh the evidence or substitute our judgment for that of the agency on a question of fact. The OTC order must be affirmed if the record contains substantial evidence to support the facts upon which the order is based, and if the order is otherwise free of error. *City of Hugo v. State ex rel. Public Employees Relations Board,* 1994 OK 134, 886 P.2d 485.

¶4 Appellant attacks the OTC order on three bases, arguing (1) that the Act violates the "contract clause" of the United States and Oklahoma Constitutions; (2) that the Act violates due process because it is unconstitutionally vague; and (3) that OTC improperly determined that certain incentives which Appellant received from cigarette manufacturers, *i.e.,* "shelf rent," could not be considered in determining Appellant's "cost" under the Act. We address the arguments in reverse order.[1]

¶5 The Act makes it unlawful for retailers[2] "to advertise, offer to sell, or sell" cigarettes or tobacco products at less than cost to the retailer "with intent to injure competitors or destroy or substantially lessen competition." 68 O.S.1991 § 328(a). Section 328(b) of the Act makes advertising at less than cost prima facie evidence of the requisite intent. "Cost," as calculated under the Act, includes certain business expenses plus the "basic cost of cigarettes and tobacco products." 68 O.S.1991 § 330.

¶6 Section 327(m) defines "[b]asic cost"[3] as "the invoice cost ... or the replacement cost ... within thirty (30) days prior to the date of sale in the quantity last purchased, whichever is lower, *less trade discounts,*" plus the full face value of required tax stamps if not already included in the manufacturer's list price, but not including a deduction for cash discounts. (Emphasis added). Section 337(b) says, "[m]erchandise given gratis or payment made to a retailer or wholesaler for display, or advertising, promotion purposes, or otherwise, shall not be considered in determining the cost of ciga-

---

1. Appellant does not otherwise challenge the Act's validity under either the Oklahoma or United States Constitutions.

2. The Act also addresses sales by wholesalers, but there are no allegations in this matter invoking those specific provisions. Only retailing activity is implicated here.

3. Most sections of the Act use the singular, "basic cost," when discussing cost calculations. However, 68 O.S.1991 § 327(m), when defining terms used in the Act, refers to "basic costs." For clarity here, the singular will be used.

rettes and tobacco products to the retailer or wholesaler."

¶ 7 The parties disagree on how to determine the "basic cost" element for the statutory formula. Appellant characterizes a payment known as "shelf rent" as a "trade discount" and, applying § 327(m), deducts this payment when determining basic cost. Appellant's analysis focuses on how "shelf rent" and another type of payment, a "buy down," similarly make products "more attractive to the consumer." Appellant considered both to be trade discounts (essentially, rebates) which lowered invoiced costs and therefore items that could be used to calculate "basic cost." OTC concludes that "shelf rent" is not a trade discount.

¶ 8 According to the undisputed evidence in the record, a "buy down" is paid by manufacturers to lower the price of their products and make them more attractive to consumers. The manufacturers pay a "buy down" for a certain period of time, or based on the number of cigarette cartons on hand, or for a certain number of cartons to be sold by the retailer. "Shelf rent," also referred to in testimony as a "contract price" or "contract amount," is an amount paid to a retailer based on how much of the manufacturer's cigarettes are displayed, the location of the displays, the quantity of the manufacturer's products compared to those of other manufacturers, and the advertising and promotion of their cigarettes by the retailer.

¶ 9 The terms "buy down" and "shelf rent" do not appear in the Act, and the term "trade discount" also is not there defined. Under the provisions of the Act, we need not determine whether "shelf rent" might be considered a "trade discount" in the abstract sense, because the Legislature specifically excluded advertising and promotional payments as deductions when calculating costs. Based on the undisputed evidence concerning "shelf rent," OTC did not err in concluding that those payments could not be used to lower Appellant's "cost" for purposes of the Act.

¶ 10 Appellant argues the Legislature left the Act unconstitutionally vague when it failed to precisely define "trade discounts." Although the Act does not precisely identify which payments are to be included in that term, § 337(b) clearly prohibits payments made for the purpose of compensating the retailer for promotion or advertising of the manufacturer's product from being considered. At least as to "shelf rent," the Act is not vague, and Appellant's argument fails.

¶ 11 Finally, we consider Appellant's contention that the Act violates Article I, Section 10 of the United States Constitution[4] and Article II, Section 15 of the Constitution of the State of Oklahoma.[5] Appellate argues that the Act is unconstitutional because it impairs and renders void contractual obligations with cigarette manufacturers under which "shelf rent" is paid.

¶ 12 Appellant misapprehends the effect of the Act on its contracts with manufacturers. Appellant is not prohibited in any way from making agreements to receive "shelf rent" payments from manufacturers, and nothing in the Act makes the agreements void or illegal. The Act merely prevents Appellant from selling cigarettes below cost, *as its "cost" is determined under the Act,* and prohibits using payments received under those agreements from being used to reduce the Appellant's cost, *for purposes of the Act.* Appellant's "contract clause" challenge fails as well.

¶ 13 The OTC order is supported by substantial evidence, and the application of the Act is otherwise free of the errors alleged by Appellant. The order is affirmed.

AFFIRMED.

HANSEN, P.J., concurs; JOPLIN, V.C.J., sitting by designation, concurs.

---

4. This section provides, in pertinent part: "No State shall ... pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts."

5. This section provides, in pertinent part: "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed."