2014 OK CIV APP 3

**BEACHNER CONSTRUCTION COMPANY, INC., Plaintiff/Appellant,**

v.

**The STATE of oklahoma ex rel. OFFICE OF STATE FINANCE, as successor through reorganization of Department of Central Services, Defendant/Appellee.**

No. 111,076.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 16, 2013.

Rehearing Denied Nov. 25, 2013.

Gerald G. Stamper, Christopher A. Barrow, Alexis L. Casady–Cohen, Barrow & Grimm, P.C., Tulsa, Oklahoma, for Plaintiff/Appellant.

Kimberlee D. Williams, General Counsel, Department of Central Services, Oklahoma City, Oklahoma, for Defendant/Appellee.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Plaintiff/Appellant Beachner Construction Company, Inc. appeals the decision of the district court dismissing its cause of action against the State of Oklahoma, *ex rel.* Office of State Finance, as successor through reorganization of the Department of Central Services (collectively DCS) for breach of contract, or in the alternative quantum meruit.[1] The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S.Supp.2008, ch. 15, app. 1, and the matter stands submitted without appellate briefing. We reverse and remand finding Beachner was not required to exhaust its administrative remedies before seeking redress in the district court.

**BACKGROUND**

¶ 2 In February 2006, Beachner was awarded a public improvement contract with

---

1. The former Department of Central Services is now the Office of Management and Enterprise Services, Division of Capital Assets Management.

the Construction and Properties Division of DCS, on behalf of the Oklahoma Conservation Commission (OCC), for the fixed sum of $2,276,837.25 on the West Commerce Tar Creek Abandoned Mine Lands Reclamation Project. The contract required Beachner to achieve substantial completion of the project in 360 days.

¶ 3 In its Petition filed in April 2012, Beachner described the project area as approximately 186 acres of land which had been used for deep shaft mining for lead deposits. The mining process left massive mounds of chat (the crushed residue from the smelting process), many open and unfilled mine shafts and heavy concrete remains of the foundations of the mining equipment. Beachner alleged it contracted to fill the abandoned mines with the mounds of chat and other materials, dispose of the remaining chat, fill existing ponds, remove existing structures, grade the entire surface to specified elevations and establish a heavy grass cover. Pursuant to the contract, Charles Nuttle, a full-time employee of OCC, was present on the Project at all times to observe Beachner's work and provide direction as necessary.

¶ 4 In its Petition, Beachner alleged multiple delays were caused by incorrect instructional drawings provided by the project design company Benham Companies, L.L.C. Beachner alleged that in April 2006 OCC held the first of several meetings to discuss problems with the instructional drawings and the resulting disruption of Beachner's work. Beachner claimed it continued to work during the interruption, but such work was inefficient and expensive. Over the following months, Benham purportedly provided three revised versions of the drawings, which Beachner claimed were all inaccurate and would not produce the results requested by DCS/OCC.

¶ 5 Beachner alleged that in August 2006 Nuttle orally directed Beachner's project superintendant to disregard the Benham drawings and perform the work in accordance with Nuttle's oral instructions. Beachner claimed change orders were never provided by DCS or OCC regarding the oral instruction revisions, but the changes were recorded by Beachner in detailed notes of the construction meetings. Beachner indicated formal change orders were executed and approved by DCS concerning the grass cover for the project. Beachner stated the project was completed in April 2008. Beachner filed the present action seeking to recover the full amount of the costs associated with the additional labor and services provided to complete the project in the amount of $929,896, which DCS and OCC purportedly refused to pay.

¶ 6 DCS filed a motion to dismiss arguing Beachner was required to exhaust its administrative remedies before jurisdiction would lie with the district court. DCS argued Beachner could receive adequate relief through the administrative appeal process set forth in O.A.C. 580:20-1-22. DCS claimed the Administrative Law Judge (ALJ) was not limited to the remedy set forth in O.A.C. 580:20-1-22(e)(7). DCS suggested the rule contemplated that claims, including those seeking monetary compensation, would be resolved through the administrative process. DCS argued the district court thus lacked subject matter jurisdiction over the dispute.

¶ 7 In response to DCS's quest for dismissal, Beachner contended it was not required to pursue its administrative remedies, as the administrative appeal process would be ineffective, futile, and would deprive Beachner of due process based upon the bias of DCS. Beachner noted the ALJ, pursuant to O.A.C. 580:20-1-22(e)(7), only possessed authority to recommend to DCS that the contractor's appeal be dismissed or that the contract award be cancelled and rebid, and that nothing in the rule granted the ALJ the authority to grant the contractor's appeal or recommend an award of damages. Beachner indicated that pursuant to the rule, the final decision maker in consideration of any claim is the Director of DCS, or the highest ranking DCS employee. Beachner argued any administrative hearing would be futile, because the construction administrator that initially denied Beachner additional compensation had recently been named the interim administrator of DCS. Beachner suggested presenting the same issues to DCS for a fourth time would not result in a different decision.

¶ 8 Beachner further claimed the administrative process would be ineffective, because DCS had not been granted the power or authority to award monetary damages to a contractor by statute or administrative rule. Finally, Beachner argued resolution of its claim through the administrative process would violate its right to due process, as DCS, which had a financial interest in the outcome of Beachner's claim, would be the final arbiter of the contractual dispute.

¶ 9 The district court granted DCS's motion to dismiss finding that DCS had the authority to authorize the payment of money damages to Beachner, and thus complete and adequate relief could be obtained through the pending administrative proceedings. It is from such order of dismissal Beachner instituted the present appeal.

## STANDARD OF REVIEW

¶ 10 Appellate courts review *de novo* a district court's dismissal of an action for lack of subject matter jurisdiction. *Samson Res. Co. v. Newfield Exploration Mid–Continent Inc.*, 2012 OK 68, ¶ 10, 281 P.3d 1278, 1281. "Motions to dismiss are generally viewed with disfavor. The purpose of a motion to dismiss is to test the law that governs the claim in litigation rather than to examine the underlying facts of that claim." *Rogers v. Quiktrip Corp.*, 2010 OK 3, ¶ 4, 230 P.3d 853, 856.

## ANALYSIS

¶ 11 In *Lone Star Helicopters, Inc. v. State*, 1990 OK 111, 800 P.2d 235, Lone Star had entered into a contract with the Oklahoma Teaching Hospitals and the Department of Human Services (collectively the State) to provide transportation for medical emergencies. Lone Star alleged the State had cancelled its helicopter service contract after Lone Star had begun performance. Lone Star initially instituted an administrative appeal pursuant to the rules promulgated by the Office of Public Affairs. Lone Star abandoned the administrative process before the agency entered a final opinion alleging the State did not have the authority to award breach of contract damages. The Oklahoma Supreme Court declared that:

Exhaustion of an administrative remedy is generally a prerequisite for resort to the courts, but the doctrine will not bar a district court action that bypasses the agency's own rule-prescribed mode for processing a *complaint if the administrative remedy is unavailable, ineffective or would be futile to pursue.*

*Id.* ¶ 6, 800 P.2d at 237. In considering the relief afforded by the administrative remedy in *Lone Star*, the Supreme Court concluded:

Clearly, then, the administrative review process does not provide an adequate avenue of relief to the plaintiff for resolution of this dispute. Although the rules may have been broad enough to provide Company some form of relief from the effect of an unlawful or unauthorized contract termination, we hold that the exhaustion-of-remedies doctrine is not invocable as a bar to the instant action for recovery of damages from breach of contract.

*Id.* ¶ 7, 800 P.2d at 238. The Supreme Court clarified the general rule on exhaustion of administrative remedies in *Waste Connections, Inc. v. Oklahoma Dep't of Envtl. Quality*, 2002 OK 94, 61 P.3d 219 by holding that:

In cases in which exhaustion of remedies is not required by statute, this Court has held that the requirement to exhaust administrative remedies is a prudential rule, rather than a jurisdictional bar. The exhaustion rule "presents a remedial barrier to judicial proceedings when an agency's rule-prescribed administrative review process is not pursued to conclusion." In such cases, the exhaustion requirement is discretionary with the court and may be excused if the administrative remedy is unavailable, ineffective or would have been futile to pursue.

*Id.* ¶ 8, 61 P.3d at 223 (citations omitted).

¶ 12 At the time the parties entered into the contract in question, DCS was charged with certain duties in the construction, improvement or utilization of buildings or land owned by the State:

The Construction and Properties Division of the Department of Central Services shall:

1. Maintain a comprehensive master plan for utilization and construction of buildings for state agencies, capital improvements, and utilization of land owned by this state;

2. Review and approve all construction plans and specifications to ensure compliance with good construction practices and space standards, costs of project, proposed construction timetables, and agency need for the project, except as otherwise provided in subsection B of this section;

3. Inspect prior to acceptance and final payment all completed projects for which the Division issued bid solicitations to ensure compliance with the plans and specifications of the project;

4. Provide assistance to state agencies when a state agency desires to hire a consultant or construction manager for a project. Except as provided by subsection B of this section, the Division shall award and execute contracts to consultants and construction managers that provide services to state agencies for construction projects;

5. Develop and issue solicitations for award of state agency contracts for construction. The Division shall have final approval authority for contracts and contract documents. Neither the Division nor any state agency shall, for performance of work that requires that a contractor be licensed by this state, issue a solicitation to, or make a contract with, a contractor not licensed by this state;

6. Review inspections performed by consultants and construction managers during construction, primary inspections when consultants or construction managers are not used, and final inspections after completion;

7. Recommend standards, including, but not limited to, building codes, space utilization, material testing, indexes of efficiency, economy, and effectiveness, pursuant to rules the Director promulgates;

8. Monitor construction projects to ensure maximum efficiency in the expenditure of state funds for construction;

9. Report fraud or waste in any construction project by written notification with documentation for the report to the Attorney General. The Attorney General shall take appropriate action to protect the interest of the state; and

10. Prequalify as good and sufficient insurance carriers, bonding companies and surety companies to meet provisions of Sections 1 and 134 of this title. The Director shall promulgate rules to establish criteria to determine whether a carrier or company is good and sufficient. The prequalification requirement and process shall not violate the provisions of Section 135 of this title.

61 O.S.Supp.2006 § 204(A). The Director of DCS was further directed to promulgate certain rules, including: "Specifying provisions the Division of a state agency shall follow to adhere to acquisition, contract, contract management and other provisions of this title." 61 O.S.Supp.2006 § 209(11).

¶ 13 The Oklahoma Supreme Court has consistently upheld the notion that an agency may only exercise those powers granted by statute:

> An administrative agency may not under the guise of its rule making power exceed the scope of its authority and act contrary to the statute which is the source of its authority. Its authority to make rules for its various procedures does not include authority to make rules which extend their powers beyond those granted by statutes.

*Adams v. Professional Practices Comm'n,* 1974 OK 88, ¶ 11, 524 P.2d 932, 934. In *City of Hugo v. State ex rel. Pub. Emp. Relations Bd.,* 1994 OK 134, 886 P.2d 485, the Supreme Court recognized the existence of implied powers in limited circumstances:

> We recognize that an officer or an agency may have implied powers not granted by statute. The authority will be implied if necessary for the due and efficient exercise of powers expressly granted or if it may be fairly implied from the statutory language. However, an agency created by statute may exercise only those powers granted and may not expand those powers by its own authority.

*Id.* ¶ 15, 886 P.2d at 492.

¶ 14 Title 580 of the Oklahoma Administrative Code contains the agency rules ap-

plicable to DCS. Chapter 20, subchapter 1 contains the specific rules governing construction contracting. As recognized by DCS, the rule specifically concerning contractor appeals with DCS can be found at O.A.C. 580:20-1-22. In accordance with this rule, Beachner submitted notice of its protest to DCS. Rule 580:20-1-22(c) provides:

> The Director will review the protest and determine to hear the appeal or assign the appeal to an administrative law judge the Department retains.
>
> (1) If the appeal is assigned to an administrative law judge, the administrative law judge shall review the appeal for legal authority and jurisdiction.
>
> (2) If legal authority and jurisdictional requirements are met, the administrative law judge shall conduct an administrative hearing in accordance with the Administrative Procedures Act, 75 O.S. Section 309 et seq., and provide proposed findings of fact and conclusions of law to the Director.
>
> (3) If the protest is heard by the Director, the Director shall have all powers granted by law including all powers delegated to the administrative law judge by this section.

DCS assigned the appeal to an administrative law judge.

¶ 15 Oklahoma Administrative Code 580:20-1-22(e) requires the ALJ to conduct the administrative hearing in accordance with the Administrative Procedures Act. Pursuant to O.A.C. 580:20-1-22(e)(6), the ALJ is afforded discretion to:

> (A) Establish a scheduling order;
>
> (B) Establish reasonable procedures such as authorizing pleadings to be filed by facsimile or electronic mail;
>
> (C) Rule on all interlocutory motions, including requests for a temporary stay of the contract award pending a final order from the Director;
>
> (D) Require briefing of any or all issues;
>
> (E) Conduct hearings;
>
> (F) Rule on the admissibility of all evidence;
>
> (G) Question witnesses; and

> (H) Make proposed findings of fact and conclusions of law to the Director.

In rendering an opinion, the ALJ's authority is described as follows: "The Administrative Law Judge may recommend that the Director deny the contactor's appeal or that the contract award be cancelled and rebid." O.A.C. 580:20-1-22(e)(7). Title 580:20-1-22(f) provides: "If the Director denies a contractor's appeal, the contractor may appeal pursuant to provisions of 75 O.S., Section 309 et seq. of the Administrative Procedures Act."

■ ¶ 16 Upon thorough review of both the Public Building Construction and Planning Act, 61 O.S.Supp.2006 § 202 et seq., and the DCS rules on Construction Contracting, O.A.C. 580:20-1-1 et seq., this Court finds no authority for the ALJ to recommend or the Director of DCS to grant an award of monetary damages to a contractor for breach of contract. Although the Director of DCS possesses the authority to enter contracts for construction projects, monitor the projects, make recommendations and supervise such projects on behalf of Oklahoma State agencies, one cannot imply the legislature intended to grant the Director of DCS the quasi-judicial authority to award damages in a contractual dispute.

¶ 17 In the present case, Beachner is solely seeking monetary damages from DCS based upon alleged breaches of the contract by DCS. Because DCS has not been granted the authority from the Oklahoma Legislature to award monetary damages in relation to construction projects, just as in *Lone Star*, the administrative process available to Beachner "does not provide an adequate avenue of relief to the plaintiff for resolution of this dispute." *Lone Star*, 1990 OK 111, ¶ 7, 800 P.2d at 238. As such, exhaustion of Beachner's administrative remedies would be ineffective and futile to remedy the purported breach of contract by DCS and damages allegedly flowing therefrom. Accordingly, Beachner was not required to exhaust its administrative remedies before seeking redress before the district court.

## CONCLUSION

¶18 Upon thorough review of both the Public Building Construction and Planning Act, 61 O.S.Supp.2006 § 202 *et seq.*, and the DCS rules on Construction Contracting, O.A.C. 580:20–1–1 *et seq.*, this Court finds no authority for the ALJ to recommend or the Director of DCS to grant an award of monetary damages to a contractor for breach of contract. As such, exhaustion of Beachner's administrative remedies would be ineffective and futile to remedy the purported breach of contract by DCS and damages allegedly flowing therefrom. Accordingly, Beachner was not required to exhaust its administrative remedies before seeking redress before the district court. The decision of the district court dismissing Beachner's Petition for lack of subject matter jurisdiction is reversed, and this case is remanded for further proceedings.

¶19 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, V.C.J., and WISEMAN, J., concur.